Allerd **SHARLOW**, Petitioner-Appellant,

v.

Thomas R. **ISRAEL** and Attorney General of Wisconsin,
Respondents-Appellees.

No. 84-2441.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 19, 1985.

Decided July 22, 1985.

Jeffrey Bergman, Legal Asst. to Institutionalized Persons Program, Madison, Wis., for petitioner-appellant.

David J. Becker, Atty. Gen. of Wis., Madison, Wis., for respondents-appellees.

Before BAUER and COFFEY, Circuit Judges, and BROWN, Senior District Judge.*

COFFEY, Circuit Judge.

The petitioner, Allerd Sharlow, appeals from a decision of the district court denying his petition for a writ of habeas corpus. Sharlow contends that the Wisconsin trial court denied him his Sixth Amendment right of compulsory process guaranteed by the Fourteenth Amendment of the United States Constitution when the trial court excluded from evidence allegedly exculpatory hearsay statements of two defense witnesses. We affirm.

### I.

The facts relating to the conviction of the petitioner Sharlow for first-degree murder are summarized in *State v. Sharlow*, 110

---

* The Honorable Wesley E. Brown, Senior District Judge of the District of Kansas, is sitting by designation.

Wis.2d 226, 327 N.W.2d 692 (1983), and are presumed correct unless not "fairly supported by the record." 28 U.S.C. § 2254(d)(8). The petitioner does not challenge the following factual narrative contained in the opinion of the Wisconsin Supreme Court:

"On the night of May 1, 1972, Thomas Blanchette and Jerry Kruschke were at Sally's Tavern in the city of Milwaukee. The victim, Edwin Harry Frahm, later joined them at the bar and the three left Sally's, inviting the bartender, Randall Lydolph, to meet them at the Driftwood Tavern for a drink. After closing Sally's, Lydolph went to the Driftwood. When Lydolph arrived at the Driftwood, he did not notice whether Sharlow was with Blanchette, Kruschke and Frahm. At Sharlow's trial, Lydolph testified that he overheard a conversation in the men's room between Sharlow and Blanchette in which Blanchette stated, 'I'm going to get this little fink,' referring to Frahm. Sharlow said, 'Let me do it; I want him,' and Blanchette replied, 'No, he's mine.' After Blanchette and Sharlow came out of the men's room, the two stood and talked for 'about two minutes.' Lydolph also saw Kruschke leave the Driftwood 'about three times.' Each time Kruschke returned, he engaged in a conversation with Blanchette. Lydolph did not remember where Sharlow was at this time.

"Kruschke, who had been granted immunity, testified that he had left the tavern to go back to the apartment he shared with Blanchette and get Blanchette's revolver. He came back because he couldn't get into the apartment. Finally, Arthur McConkey, a neighbor, gave the gun to Kruschke. Kruschke gave the revolver to Blanchette in the men's room at the Driftwood. This occurred before Sharlow's conversation with Blanchette in the men's room.

"Lydolph saw a group of four or five people, which included at least Kruschke and Frahm, leave the tavern together. He observed them drive off in a Corvair. Kruschke testified that he, Blanchette, Frahm and Sharlow left the Driftwood, driving off in Sharlow's Corvair. Kruschke was driving, at Blanchette's request; Frahm was in the front passenger seat; and Blanchette and Sharlow were in the rear seat. Sharlow was seated behind Frahm, and Blanchette was behind the driver. Kruschke testified that he heard a shot ring out and saw Frahm slump in the seat. Kruschke immediately looked in the rearview mirror and saw Sharlow holding the gun. At the same time, Sharlow was asking Blanchette if Sharlow would give Kruschke 'a couple.' Blanchette replied, 'Leave him alone; he's all right.' Blanchette then told Sharlow, 'Give him [Frahm] another one.' After more shots were fired, Kruschke saw Sharlow hand the revolver to Blanchette. Blanchette then directed Kruschke to drive to the spot where Frahm's body was found. Kruschke testified that Blanchette and Sharlow dragged the body to a creek, where they disposed of it.

"Two days later, Frahm's body was discovered in a creek in New Berlin. A spent red cartridge and red spots were found on a nearby driveway. An autopsy showed that the victim had been shot in the head five times.

"At the trial, the pathologist testified that at least two of the bullets were fired at very close range—one to five inches. All of the wound trajectories angled downward and to the right.

"Codefendant Blanchette's trial was severed from Sharlow's. At Sharlow's trial, the defense called Blanchette as a witness; however, Blanchette invoked his Fifth Amendment privilege.

"The defense then proferred the testimony of Sharon Henne and James McNeal. If permitted to testify, Henne would have testified that Blanchette told her that 'he was the one that had shot this person six times in the head,' and that on another occasion, Blanchette asked her 'if I would believe him if he told me that he had not actually done the shooting but that Al [Sharlow] did and he wasn't going to "sit" any more for some-

thing he didn't do.' She also would have stated that she had known Blanchette for three months and had seen him daily in that period. If permitted to testify, McNeal would have testified that he shared a jail cell with Blanchette and that Blanchette told him [more than one month after the crime] that while in the car, he solicited Sharlow to participate in the murder; that Sharlow refused and grabbed Blanchette's arm and struggled with him in an attempt to prevent the shooting; that Blanchette shot Frahm after he wrestled the gun from Sharlow; and that he and Kruschke were roommates and shared a homosexual relationship, a relationship denied by Kruschke at trial. (Explanation added).

*Sharlow*, 110 Wis.2d at 228–31, 327 N.W.2d at 693–95.

Sharlow claims, as he has throughout his direct and collateral attacks on the guilty verdict, that the trial court deprived him of his Sixth Amendment right to present a defense when it excluded Henne's and McNeal's hearsay testimony.[1]

## II.

In *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973), the United States Supreme Court stated:

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process."

The *Chambers* decision held that the defendant Chambers was denied a fair trial when a Mississippi trial court ruled that the defendant could not impeach his own witness, a Mr. MacDonald, who had previously confessed to committing the crime.[2] The Court also held that the defendant was denied a fair trial when the trial court refused to allow three of MacDonald's friends to present hearsay testimony that MacDonald confessed committing the crime to them shortly after the crime's occurrence. Similar to the situation in *Chambers*, the Wisconsin trial court did not allow Sharlow to present two witnesses, Henne and McNeal, who according to the offer of proof made to the trial court would have testified that Blanchette had committed the murder. At the time of the *Chambers* decision, Mississippi's rules of evidence like Wisconsin's rules did not recognize the hearsay exception for statements made against penal interest.

In a portion of its opinion addressing hearsay concerns, the *Chambers* Court noted the basis upon which hearsay rules of exclusion are formulated:

"The hearsay rule, which has long been recognized and respected by virtually every State, is based on experience and grounded in the notion that untrustworthy evidence should not be presented to triers of fact. Out-of-court statements are traditionally excluded because they lack the conventional indicia of reliability. . . ."

*Id.* at 298, 93 S.Ct. at 1047. However, the Court held that under the facts in *Chambers*, the evidence was critical to Chambers' defense and evidenced a sufficient indicia of trustworthiness and, thus, the ruling of the Mississippi trial court denying the defense the opportunity to present testimony of three witnesses exculpating Chambers denied him a fair trial.

"Few rights are more fundamental than that of an accused to present witnesses in his own defense. . . . In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. Although perhaps no rule of

---

**1.** For sake of convenience, the offer of proof made at trial concerning the proferred testimony of Henne and McNeal will be referred to as Henne's and McNeal's testimony, respectively.

**2.** MacDonald had previously made several statements to three witnesses incriminating himself in the same murder, but at trial he denied making these admissions.

evidence has been more respected or more frequently applied in jury trials than that applicable to the exclusion of hearsay, exceptions tailored to allow the introduction of evidence which in fact is likely to be trustworthy have long existed.... Under these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice."

*Id.* at 302, 93 S.Ct. at 1049. In assessing the reliability of the hearsay testimony, the Court found that the statements contained a "persuasive assurance of trustworthiness," as: (1) the confession was spontaneously made to two close acquaintances shortly after the murder occurred; (2) each statement was corroborated at trial by other independent evidence; (3) the confession was self-incriminating and unquestionably against penal interest; and (4) the declarant, MacDonald, was available for cross-examination by the State at trial. *Id.* at 300-01, 93 S.Ct. at 1048. The Court in *Chambers* emphasized that it was restricting its holding to the facts before it. *Id.* at 303, 93 S.Ct. at 1049. Thus, the factors just mentioned in the decision assessing reliability of hearsay testimony should not be considered exhaustive or absolute. *See United States v. Guillette,* 547 F.2d 743, 754 (2d Cir.1976), *cert. denied,* 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977). Although *Chambers* was decided on due process grounds, under the facts of this case the *Chambers* analysis is equally applicable to the petitioner's claim that he was deprived of his Sixth Amendment right to present a defense.[3] With these standards in mind, we turn to the excluded hearsay statements.

At trial, Sharlow offered the testimony of Blanchette's girlfriend, Sharon Henne. If allowed to testify, Henne would have stated that Blanchette confessed to her that he shot and killed Frahm. Henne would have also stated that just prior to Blanchette's arrest, Blanchette asked "if I would believe him if he told me that he had not actually done the shooting but that Al [Sharlow] did and he wasn't going to 'sit' any more for something he didn't do."

In *Chambers,* the Supreme Court, in addressing the importance of admitting evidence excluded under the hearsay rule, adopted a balancing approach in weighing the State's legitimate interest in formulating rules of evidence to conduct its trials against the defendant's need for the evidence and the evidence's trustworthiness. *See Chambers,* 410 U.S. at 302, 93 S.Ct. at 1049; *see also Green v. Georgia,* 442 U.S. 95, 97, 99 S.Ct 2150, 2151, 60 L.Ed.2d 738 (1979); *Alicea v. Gagnon,* 675 F.2d 913, 923 (7th Cir.1982); *McMorris v. Israel,* 643 F.2d 458, 461 (7th Cir.1981), *cert. denied,* 455 U.S. 967, 102 S.Ct. 1479, 71 L.Ed.2d 684 (1982). In assessing the defendant's need for the evidence, *Chambers* stated that the evidence must be "critical." *Chambers,* 410 U.S. at 302, 93 S.Ct. at 1049. In *United States v. Valenzuela-Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982), the Supreme Court shed some light on what it considers as "critical" evidence when it noted that the right to compulsory process as guaranteed by the Sixth Amendment "suggests that more than a mere absence of testimony is necessary to establish a violation of the right." *Id.* at 867, 102 S.Ct. at 3446. Rather, the Court stated that the excluded evidence must be *"relevant and material and ... vital to the defendants,"* *id.* citing *Washington v. Tex-*

---

**3.** Sharlow cites *United States v. Valenzuela-Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982) and argues that any evidence that is favorable and material to the defendant is subject to compulsory admission under the Sixth Amendment. In *Valenzuela,* the government exported several illegal aliens before the defendant had a chance to interview them to determine if they could provide him with material evidence to aid his defense. The Court held that

in order to establish a Sixth Amendment violation, the defendant must demonstrate that the witness's testimony would have been favorable and material to his defense. However, *Valenzuela* did not address the issue presented in this case of whether a witness, who is available to testify, can present hearsay evidence to aid the defendant. Rather, the *Chambers* case addresses this precise issue and thus controls our analysis.

*as*, 388 U.S. 14, 16, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1969), to a degree sufficient to establish that the exclusion of the evidence could have " 'affected the outcome of the trial.' " *Valenzuela-Bernal*, 458 U.S. at 868, 102 S.Ct. at 3446 citing *United States v. Augurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976). Thus, as the district court explained in this case, "critical evidence is evidence which would make a material difference to the outcome of Sharlow's case."

■ Henne's testimony concerning hearsay statements made by Blanchette where he admitted that he shot Frahm was not critical to Sharlow's defense since Sharlow was also charged under the Wisconsin's party to a crime statute, *see* Wis.Stat. § 939.05,[4] which provides that a person may be a party to a crime if he directly commits the crime, aids or abets in the commission of it, or is a party to a conspiracy with another to commit the crime. While Henne's testimony did inculpate Blanchette, her testimony was not critical to Sharlow's case because it did not exculpate Sharlow from being a party to the crime of murder; thus, under the facts presented to the jury, Sharlow could still be found guilty for Frahm's murder under Wisconsin's party to a crime statute. The state presented Lydolph, a prosecution witness who testified that he overheard a conversation in the bathroom between Sharlow and Blanchette wherein Sharlow told Blan-

chette that he would "get him" for Blanchette. Further, the State introduced sufficient evidence to establish that Sharlow was present at the murder scene, was seated in his own car behind the victim Frahm at the time of the murder, and helped dispose of the victim's (Frahm's) body. The combination of Sharlow's actions including his promise to "get him," his presence in the car during the murder and his helping to dispose of the body would be sufficient to convict Sharlow as a party to the crime of first-degree murder, regardless of who pulled the trigger of the gun. *See State v. Sharlow*, 110 Wis.2d at 235, 327 N.W.2d at 697.[5]

■ The other defense witness McNeal, if allowed to testify, would have stated that he was Blanchette's cellmate during the time Blanchette was confined to the county jail. During his period of confinement, Blanchette told McNeal, some one month after the crime occurred, that while in the car he (Blanchette) asked Sharlow to participate in the murder but Sharlow refused; subsequently, Blanchette and Sharlow struggled in the car after Sharlow allegedly grabbed Blanchette's arm in an attempt to prevent the shooting. According to the offer of proof made at trial, McNeal further would have stated that Blanchette had told him that once he had broken free from Sharlow, he (Blanchette) shot Frahm. This testimony was "critical" to Sharlow's defense since it could have exculpated

---

**4.** The Wisconsin Supreme Court opinion indicates that Sharlow was charged generally under section 939.05 and not any specific subsection. *See Sharlow*, 110 Wis.2d at 227, 327 N.W.2d at 693.

**5.** Sharlow also argues that Henne's testimony is inherently trustworthy as the State used this evidence against Blanchette at his trial. Sharlow argues that this situation is similar to that found in *Green v. Georgia*, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979) where the Supreme Court held that the defendant's right to a fair trial was prejudiced when the State excluded hearsay evidence that exculpated the defendant from the crime. In *Green*, the defendant was charged with first-degree murder. During the second portion of the bifurcated trial assessing the defendant's guilt, the State was able to exclude the hearsay evidence exculpating the de-

fendant. However, at his co-defendant's trial, the State relied on the hearsay testimony as evidence against the co-defendant. The Supreme Court held that in this situation the State had in fact admitted the reliability of the hearsay testimony and thus it should have been admitted during Green's trial. The *Green* decision is inapposite in two respects. First, Henne's testimony was not exculpatory since Sharlow still could have been convicted as a party to the crime of murder. Second, although the State did use Henne's testimony at Blanchette's trial, it did not rely upon Henne's testimony, as evidenced by its closing arguments, as it argued that Blanchette was the person who had masterminded the murder while Sharlow was the triggerman. Thus, the State's theory of the case in Blanchette's trial did not contradict the theory it followed at Sharlow's trial.

Sharlow from the murder of Frahm; however, McNeal's testimony fails to meet any of the criteria mentioned in *Chambers* for evaluating the reliability or trustworthiness of hearsay testimony (i.e., statements made to a close acquaintance, corroboration, statements against penal interest and availability of declarant for cross-examination).[6]

■ In *Chambers*, the statements were "made spontaneously to close acquaintances ...," yet in this case Blanchette made the statements to McNeal, a mere cellmate, and there is nothing in the record to suggest that McNeal was a close acquaintance of Blanchette. Further, the critical portion of McNeal's testimony exculpating Sharlow from guilt for the crime where Blanchette allegedly told McNeal that he (Blanchette) had asked Sharlow to kill Frahm but that Sharlow refused and a struggle ensued between the two as Sharlow attempted to prevent the murder, fails to meet the test of corroboration as there is no evidence to support McNeal's secondhand, hearsay version of the event. Sharlow argues that the pathologist's testimony detailing that the bullets that killed Frahm proceeded in a downward angle and to the right through his head corroborate McNeal's testimony that Blanchette must have shot Frahm since Blanchette admittedly was seated in the back seat, behind Kruschke, and to the right of Frahm. However, as the Wisconsin Supreme Court in analyzing this argument noted in its opinion, the pathologist testified that she was unable to express an opinion as to the location of the weapon at the time it was fired, and that no such opinion would ap-

pear scientifically possible since there was no evidence in the record to establish the position of the victim's head at the time of the shooting. *Sharlow,* 110 Wis.2d at 236, 327 N.W.2d at 697. Further, if we were to accept McNeal's testimony that Blanchette asked Sharlow to murder Frahm while they all were seated in the same car and, after Sharlow refused, the two men struggled for the gun, it seems most unlikely that Frahm would not have heard the conversation and would have continued to sit quietly by, entirely oblivious to the conversation as to who was to be the "hit" man and the struggle over a loaded pistol, without making any attempt to escape. Henne's hearsay testimony that Blanchette confessed to her that he had shot Frahm also fails to corroborate the essential portion of McNeal's statement that there was a struggle between Sharlow and Blanchette for the gun prior to the shooting. While Henne's testimony does seem to corroborate that portion of McNeal's testimony wherein Blanchette admitted shooting Frahm, serious doubt is cast upon Blanchette's confession considering that Blanchette shortly thereafter recanted his confession to Henne. Further, the jury was unable to assess Blanchette's credibility, the truthfulness of his alleged admission, or his recantation of the admission, since Blanchette invoked his Fifth Amendment right against self-incrimination at Sharlow's trial and thus was unavailable for direct or cross-examination.[7]

■ Sharlow finally argues that since Blanchette's statements were against Blanchette's penal interest[8] and since Wiscon-

---

**6.** While we do not read *Chambers* to require that all four factors be met, we point out that McNeal's testimony failed to meet any of the factors.

**7.** Sharlow contends, as he did before the district court, that the State is somehow responsible for Blanchette's unavailability at trial since the State could have tried Blanchette first. Thus, the petitioner suggests that had Blanchette been tried first and found guilty he would have been much more amenable to testifying; however, this argument is nothing more than sheer speculation. We agree with the district court that the

prosecution "has no duty to confer immunity or coordinate the prosecution of co-defendants in the manner Sharlow suggests."

**8.** In *Chambers* the Court stated that the statements must be "in a very real sense self-incriminatory and unquestionably against interest." 410 U.S. at 301, 93 S.Ct. at 1048. As recognized by the district court, Blanchette's statement that Sharlow was not a party to the murder is not unquestionably against his interest since the statement, at best, only indirectly made Blanchette appear any more guilty of being party to a murder than he already appeared.

sin now allows the reception of such testimony as an exception to the hearsay rule, *see* Wis.Stats. § 908.045(4),[9] he should be granted a new trial. However, as the Wisconsin Supreme Court recognized, "this argument assumes too much, since under Sec. 908.045(4), Wis.Stats., Blanchette's statement would not be admissible unless corroborated." *Sharlow*, 110 Wis.2d at 237–38 n. 9, 327 N.W.2d 692.[10]

■ When the defendant's Sixth Amendment right to present a defense collides with the State's interest in promulgating rules of evidence to govern the conduct of its trials, the merits of the respective positions must be weighed, and the State's interest must give way to the defendant's rights if its rules are "mechanistically" applied to deprive the defendant of a fair trial. *Chambers*, 410 U.S. at 302, 93 S.Ct. at 1049. In this case we hold that the hearsay rule was not "mechanistically" applied since Henne's hearsay testimony was not critical to Sharlow's defense and McNeal's hearsay testimony was not reliable. Thus, the Wisconsin trial court's exclusion of their hearsay testimony under the Wisconsin Rules of Evidence did not violate Sharlow's Sixth Amendment right to compulsory process.

The decision of the district court is AFFIRMED.

---

**9.** At the time of Sharlow's trial in 1972, the State of Wisconsin did not recognize the hearsay exception for statements made against penal interest; subsequently, this exception to the hearsay rule was added to the Wisconsin Code of Evidence in language closely tracking the language in Fed.R.Evid. 804(b)(4).

**10.** Sharlow also claims that if McNeal were allowed to testify he would have disclosed that Blanchette and Kruschke shared a homosexual relationship and thus he should have been allowed to demonstrate the bias of Kruschke in testifying against Sharlow. Even if this im-

peachment evidence were admissible, we do not believe the exclusion of McNeal's testimony in any way prejudiced Sharlow's case. Granted, if Kruschke shared a homosexual relationship with Blanchette, it would tend to show some bias in favor of testifying against Sharlow. However, Kruschke's testimony also clearly implicates Blanchette in the murder and thus Sharlow's argument that Kruschke was biased in testifying against Sharlow is not persuasive since Kruschke's testimony also inculpates Blanchette in the murder.