**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jeremy MELTON, Defendant–**
**Appellant.**

No. 00–3051.

United States Court of Appeals,
Seventh Circuit.

Argued April 18, 2001.

Decided Dec. 11, 2001.

Before WOOD, Jr., DIANE P. WOOD, and WILLIAMS, Circuit Judges.

## ORDER

Jeremy Melton was convicted of theft of firearms and conspiracy to commit arson, steal firearms, and possess stolen firearms. He appeals his convictions, arguing that the district court erred in excluding evidence that a government witness had failed a polygraph examination regarding that witness's involvement in the firearms theft, and also in excluding testimony regarding another individual's alleged confession. We find no error in the district court's exclusion of this evidence and therefore affirm Melton's convictions.

## I. BACKGROUND

Jeremy Lemke, a friend of defendant Jeremy Melton's, devised a scheme to break into and steal guns from Bob's Trading Post, a federally-licensed firearms dealer. Melton agreed to help with the break-in and theft, and Lemke's brother, Christopher, agreed to create a diversion by setting fire to another local business. Jeremy Lemke also recruited Juvenal Lemus to participate, but on the day the burglary was to occur, Lemus could not be reached. The plan went forward without Lemus, with Melton and Jeremy Lemke breaking into and stealing 14 guns from Bob's while Christopher Lemke set fire to the other targeted business.

During its investigation of the burglary, Treasury Department agents interviewed Lemus, who initially denied any knowledge of or involvement in the scheme. He submitted to a polygraph examination, during which he responded "no" to the following three questions:

Did you plan with anyone to steal any of those weapons?

Did you yourself steal any of those weapons?

Do you know for sure who stole any of those weapons?

The polygraph examiner reported that "[b]ased upon the physiological reactions of Juvenal Lemus, he was attempting deception in his answers to the above relevant questions." Agent Steve Smith told Lemus's attorney that Lemus had lied on all three questions, and Lemus then agreed to cooperate. Christopher and Jeremy Lemke ultimately confessed and agreed to cooperate with the government.

Lemus and both Lemkes testified for the government about Melton's participation in the scheme. A jury convicted Melton of theft of firearms in violation of 18 U.S.C. § 922(u) and conspiracy to commit arson, steal firearms, and possess stolen firearms in violation of 18 U.S.C. § 371.

## II. ANALYSIS

### A. Exclusion of Polygraph Evidence

At trial, the district court ruled that Melton could not question Agent Smith and Lemus about the results of Lemus's polygraph examination. Melton's theory was that Lemus and another individual, Cory Cusak, had actually participated in the theft of firearms with the Lemke brothers. Evidence that Lemus lied on the polygraph–particularly in response to the second question about whether he had stolen any of the guns–was relevant, according to Melton, both to the issue of Lemus's credibility and to discredit the government's theory that Lemus was not involved in the burglary. Melton claims that the court's limitation of his cross-examinations of Agent Smith and Lemus violated his Sixth Amendment right to confront witnesses against him. We generally review a court's limitation of cross-examination, including its decision whether to exclude cross-examination about polygraph examinations, for abuse of discretion, *United States v. Robbins*, 197 F.3d 829, 844 (7th Cir.1999), but if the limitation directly implicates the defendant's Sixth

Amendment right to confront witnesses against him, we review the limitation de novo. *Id.; United States v. Cavender*, 228 F.3d 792, 798 (7th Cir.2000); *see United States v. Nelson*, 39 F.3d 705, 708 (7th Cir.1994).

■ In exercising its discretion in determining whether to admit polygraph evidence, "the trial court must engage in a delicate balancing of many factors including probative value, prejudicial effect, confusion of the issues, misleading the jury, and undue delay." *United States v. Olson*, 978 F.2d 1472, 1480 (7th Cir.1992); *Robbins*, 197 F.3d at 844. Here, the district court allowed Melton to cross-examine Lemus about his responses to the polygraph questions and to establish that Lemus decided to cooperate after Agent Smith communicated to him his belief that Lemus had lied in response to those questions. The only effect of the district court's limitation was that Melton was prevented from questioning witnesses about the polygraph examiner's opinion that Lemus was "attempting deception" in response to the three questions posed during the examination. But we agree with the district court that the polygraph examiner's conclusion that Lemus "was attempting deception" in his responses does not establish that Lemus's response to any particular question was indeed false. Melton offered no expert testimony (through the examiner or otherwise) establishing the reliability of the test or supporting his interpretation of the examiner's conclusion, and therefore the court was entitled to conclude that the report did not provide a sufficient basis for inferring that Lemus lied in response to the second question or actually committed the theft. *See United States v. Lea*, 249 F.3d 632, 640 (7th Cir.2001); *United States v. Pulido*, 69 F.3d 192, 204 (7th Cir.1995). The district court was therefore within its

discretion in barring cross-examination about the polygraph test or its results.

Furthermore, the district court's limitation on Melton's cross-examinations of Agent Smith and Lemus did not rise to the level of a Sixth Amendment violation. "[T]he Sixth Amendment only guarantees the defendant the opportunity for effective, not limitless, cross-examination." *United States v. Dillard,* 43 F.3d 299, 305 (7th Cir.1994); *United States v. Sanders,* 962 F.2d 660, 679 (7th Cir.1992). Melton was not denied the opportunity to effectively attack Lemus's credibility or challenge his testimony denying his participation in the theft. As we just noted, Melton was able to establish that Agent Smith told Lemus that he had reliable information that he lied in response to the three questions about his participation, and that Lemus made his decision to cooperate after Smith told him he was lying. Melton further impeached Lemus by cross-examining him about his pretrial diversion cooperation agreement, his lies in response to agents' questions, and inconsistencies between his statements to agents and his trial testimony. We therefore conclude that the exclusion of testimony about the polygraph's results did not violate Melton's Sixth Amendment rights. *See Robbins,* 197 F.3d at 844–45; *Dillard,* 43 F.3d at 305.

B. Exclusion of the Third–Party Confession

Melton also sought to introduce the testimony of a witness, Ray Golec, who had reported to Agent Smith that another individual, Ole Lundstedt, told him that Corey Cusak admitted that he had participated in the theft of guns from Bob's. Melton does not challenge the district court's determination that the proposed testimony contained two levels of hearsay and did not satisfy the requirements of any of the exceptions to the hearsay rule. He argues, instead, that the statement was nonetheless admissible as a third-party confession,

relying on *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). In *Chambers,* the Supreme Court recognized that a mechanical application of a state's hearsay rules to exclude a third-party confession may deny ·defendant due process if the excluded confession "bore persuasive assurances of trustworthiness" and was "critical" to the defendant's case. *Id.* at 302; *see also Green v. Georgia,* 442 U.S. 95, 97, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979). The court in *Chambers* identified the following factors as relevant to determining the reliability of the third-party confession: (1) the statement was made to a close acquaintance shortly after the crime was committed; (2) the statement was corroborated by other evidence in the case; (3) the statement was against the declarant's interest; and (4) the declarant was available to be cross-examined about the statement. 410 U.S. at 300–01; *United States v. Hall,* 165 F.3d 1095, 1113 (7th Cir.1999). These factors "are not exhaustive or absolute," and therefore the declarant's unavailability for cross-examination, for example, is not dispositive. *Cunningham v. Peters,* 941 F.2d 535, 540 (7th Cir.1991); *see Sharlow v. Israel,* 767 F.2d 373, 377 (7th Cir.1985).

We conclude that the district court properly excluded Golec's testimony. If Cusak did indeed confess his participation in the scheme to Lundstedt, this sort of statement would unquestionably be against interest. Melton argues that, under *Chambers,* the statement's reliability was also supported by evidence that Cusak had a criminal record and was identified as participating in the sale of the stolen weapons. But Melton did not seek to introduce Cusak's statement through Lundstedt, whose own credibility could then have been tested through cross-examination. Instead, Melton sought to introduce the statement through Golec's testimony about what Lunstedt told him, and there is nothing to support the reliability of this second

layer of hearsay. That Cusak's alleged statement to Lundstedt was against Cusak's penal interest does not reveal anything about the reliability of Lundstedt's statement to Golec. The circumstances in this case do not indicate that Lundstedt's statement is entitled to more confidence that any other hearsay statement, which we ordinarily presume to be untrustworthy. The district court did not err in excluding it.

### III. CONCLUSION

The judgment of the district court is AFFIRMED.