JOSEPH VELLA PRUITT *v.* STATE OF INDIANA.

[No. 977S687. Filed November 9, 1978.]

*Lante K. Earnest, Klineman, Rose and Wolf,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert J. Black,* Deputy Attorney General, for appellee.

PIVARNIK, J.—Appellant Pruitt was charged, by way of information, with the crimes of kidnapping, commission of a felony while armed, to-wit: rape, rape, commission of a felony while armed, to-wit: robbery, and inflicting injury while in the commission of a robbery. Following a jury trial in the Marion Criminal Court, Pruitt was found guilty of kidnapping, commission of a felony while armed, to-wit: rape, and inflicting injury while in the commission of a robbery. For these crimes appellant was sentenced to life imprisonment, life imprisonment, and a determinate period of twenty-five years imprisonment, respectively. The two life sentences were to run concurrently, while the determinate sentence was to run consecutively with the life sentences.

The incidents giving rise to these offenses occurred on December 3, 1976. At 7:40 p.m., the victim, P.L., was returning from dinner to her place of employment. As she was getting out of her automobile in the parking lot, the appellant approached her holding a knife. Appellant forced the victim back into the car while he climbed into the driver's seat. He then drove along a meandering route through the streets and alleys of Indianapolis, all the while holding a knife to the

victim's knee. Finally he pulled into an alley between two garages. There, appellant demanded money from the victim but was informed that she had less than two dollars. Appellant then ordered the victim to disrobe in the back seat where he raped her while holding the knife under her ear. Following the rape, the victim attempted to kick the appellant in hopes of escaping. Appellant dragged the victim into a garage where he slashed her throat. He then took the victim's watch and stabbed her in the chest and stomach. The victim collapsed, whereupon appellant began strangling her. She lost consciousness at that point and, when she awoke, the appellant was gone.

Appellant presents four issues for our review. They concern: (1) the method by which the special judge was appointed and the denial of appellant's motion for change of judge; (2) the refusal of certain instructions tendered by appellant; (3) the imposition of the consecutive sentence,. and; (4) the sufficiency of the evidence.

## I.

Appellant's first allegation of error concerns the manner in which Special Judge Andrew Jacobs, Sr. was appointed to try the case. The record shows that this cause was originally assigned to Judge Dougherty who had scheduled the case to be tried on February 23, 1977. The day before the trial date, Judge Dougherty asked the prosecutor and defense counsel whether they would have any objection to his appointing a special judge in the case "because of the court being busy with the regular calendar and because of personal illness." Counsel for both sides agreed orally in open court that they would have no objection. The next morning, defense counsel was informed that Judge Jacobs had been selected Special Judge. Before trial began, defense counsel appeared before Judge Jacobs and made an objection which, in pertinent part, was as follows:

"[I]n Criminal Court Two, the counsel for both the State and the Defendant were asked, in the presence of the Defendant, whether they had any objection to the appointing of a Special Judge. Neither side had any objection, but, in the case of the Defendant, his Attorney was relying on his understanding of the procedure in Court Two, which is, when Judge Dougherty is required to hear another matter, at the same time another trial is scheduled, he appoints a member of a standing group of attorneys to hear the case."

Thus, it appears clear from the record that appellant was content to allow Judge Dougherty the authority to appoint a special judge until it was discovered that the exercise of that authority resulted in the selection of Judge Jacobs. Appellant now argues that this method of selection, which he had agreed to, was improper because it did not comport with Ind. R. Crim. P. 13, in that a three member panel was not named from which the parties could strike. A similar issue was decided by this court in *Gears* v. *State*, (1932) 203 Ind. 400, 180 N.E. 592. There, the presiding judge, who had disqualified himself for bias, appointed one Mr. McDonald as a special judge in the case. Neither side objected to this appointment until the defendant's appeal wherein it was argued that the special judge was without jurisdiction, because he was not selected pursuant to the statutory procedure. This court stated:

"The method of selecting the special judge was irregular, and, if the defendant had objected and asked that the regular judge submit a list of three competent and disinterested persons, it would have been reversible error to have refused his request. But defendant made no objection to Mr. McDonald's appointment and recognized his jurisdiction by appearing and making a motion to quash, a verified motion for change of venue from the county and an oral motion for continuance. We see no reason why a defendant may not waive an irregularity in the method of taking a change of venue from the regular judge or in the manner of selecting a special judge, if he should choose to do so with full knowledge of the extent and nature of the irregularity."

*Id.* at 203 Ind. 405, 180 N.E. 594. Here, as in *Gears*, appellant was fully aware of the irregularity in the manner of selection at the time of the stipulation. If appellant wished

to have a panel named pursuant to criminal rule 13, he was required to object to the method of selection before he had agreed to it. As he did not do so, his objection to Judge Jacobs was waived.

Appellant also argues that the trial court erred in denying his motion for change of venue from the judge. This motion was made in open court on the morning before trial, and thus was not filled within the time limits set out in Ind. R. Crim. P. 12 for an automatic change of judge. It was therefore necessary for the appellant to show cause as to why he was entitled to the change. The only attempt to show cause came when appellant took the stand and alleged, under oath, that he felt he could not receive a fair trial from Judge Jacobs. His reason for this opinion was that he believed that if he were found guilty Judge Jacobs would not suspend his sentence, whereas he believed Judge Dougherty would. Aside from this belief, appellant made no attempt to show any bias or prejudice that may have existed concerning the trial judge. Without such a showing, appellant was not entitled to a change of venue from the judge. *Massey* v. *State,* (1978) 267 Ind. 504, 371 N.E.2d 703, 707. There is no error presented here.

## II.

Appellant next contends that it was error for the trial court to refuse his tendered instructions concerning lesser included offenses. The test for determining whether it was error to refuse instructions on lesser included offenses is whether there was evidence adduced at trial to which the included offense instruction was applicable. *Hester* v. *State,* (1974) 262 Ind. 284, 315 N.E.2d 351; *Hash* v. *State,* (1972) 258 Ind. 692, 284 N.E.2d 770. In the case at bar the only real issue for the jury to decide was the identity of the attacker. In no way could the testimony of P.L. be construed to support a conviction of assault and battery or any of the lesser offenses described in the appellant's tendered

instruction. Where, as here, the only point of contention at trial is the issue of the identity of the perpetrator of the offenses, it is not error to refuse instructions on lesser included offenses. *Sharp* v. *State,* (1977) 267 Ind. 198, 369 N.E.2d 408, 410.

## III.

Appellant's next assignment of error concerns the sentences imposed on him by the trial court. Appellant was sentenced to life imprisonment for kidnapping and to a concurrent life sentence for armed rape. He was also sentenced to a determinate period of twenty-five years imprisonment for inflicting injury during the commission of a robbery, this sentence to run consecutively to the life sentences under authority of Ind. Code § 35-12-1-1 (Burns 1975). The trial court recommended, pursuant to Ind. Code § 11-1-1-11 (Burns 1975), that none of these three terms should commence until completion of the sentence for which appellant was on parole at the time the offenses in question were committed. The trial judge further recommended on the commitment order that, "In my judgment this man should never be released."

Appellant concedes that the sentencing was within the trial court's statutory authority, however, he urges this court to exercise our constitutional power to review and revise sentences in criminal proceedings. Ind. Const. art. 7, § 4. Given the brutal nature of the attack and the appellant's lengthy criminal record, the sentences imposed in this case were not excessive or disproportionate to the offenses committed. Ind. R. App. Rev. Sen. 2.

Appellant also argues that it was error to impose sentences for all three crimes because they all "arose from the same criminal activity; that is, the time, place, manner and continuous event, rather than arising from different criminal activities." The test for determining whether or not separate sentences may be imposed upon multiple counts is whether the offenses charged are themselves the

same, not whether they all arose from the same criminal act or course of conduct. *Elmore* v. *State,* (1978) 269 Ind. 532, 382 N.E.2d 893. The position advanced by appellant has been called the "same transaction" or "single frolic" concept and has been almost universally rejected by those courts which have considered it. For example:

> "One of the theses underlying the 'single frolic' notion is that the criminal episode is 'indivisible.' The short answer to that is that the victims, the criminal conduct is readily divisible and intensely personal; each offense is an offense against *a person.* For me it demeans the dignity of the human personality and individuality to talk of 'a single transaction' in the context of six separate assaults on six individuals."

*Ashe* v. *Swenson,* (1970) 397 U.S. 436, 468-69, 90 S.Ct. 1189, 25 L.Ed.2d 469, 489. (Burger, C.J., dissenting) (emphasis in original). We think it is equally demeaning to human dignity to speak of a single transaction consisting of separate assaults upon a single victim. To her, the kidnapping, rape, robbery and injuries were readily distinguishable. As none of the offenses with which appellant was convicted were a lesser included offense of the others, and each required proof of additional facts which the others did not, it was entirely appropriate to impose sentences upon each. *Elmore, supra.* There is no error here.

## IV.

Appellant's final argument concerns the sufficiency of the evidence supporting his conviction. His sole claim in this regard is that the victim was mistaken when she identified appellant as her assailant. On appeal, this court does not judge the credibility of witnesses nor weigh the evidence, but rather looks to the evidence most favorable to the state along with the reasonable inferences to be drawn from that evidence. *Sypniewski* v. *State,* (1977) 267 Ind. 224, 368 N.E.2d 1359. The record in the present case discloses that the victim, P.L., observed appellant for approximately three minutes while in the parking lot from

which she was abducted. The parking lot was illuminated by large flood lights. She observed him in the car as he drove her to the alley where the attack occurred. In all, the victim was with the appellant for approximately forty-five minutes. After the attack, P.L. was able to select appellant's photograph from a police display consisting of between two and three hundred photos. The next day she was again able to identify appellant's face from among fifteen mug shots. The weight given to a positive identification of an accused by a witness is a matter which falls within the exclusive province of the trier of fact. We find the evidence sufficient to support the conclusion by the jury that appellant was the perpetrator of the crimes.

The judgment of the trial court is affirmed.

All justices concur.

NOTE.—Reported at 382 N.E.2d 150.