Richard HUFFMAN, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8602–CR–207.

Supreme Court of Indiana.

Sept. 7, 1989.

Rehearing Denied Nov. 29, 1989.

Jill E. Greuling, Samper Hawkins Atz & Greuling, Monica Foster, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in appellant's conviction of Robbery, a Class A felony, for which he received a sentence of fifty (50) years; Murder, for which he first received a sentence of sixty (60) years; Felony Murder, for which he first received a sentence of sixty (60) years; Conspiracy to Commit Robbery, a Class A felony, for which he received a sentence of fifty (50) years; Conspiracy to Commit Murder, a Class A felony, for which he received a sentence of fifty (50) years, his sentences to be served consecutively. The trial court then corrected the sentences and the murder and felony murder convictions were merged, and appellant was sentenced to death.

The facts are: On the evening of June 4, 1984, Kerry Golden, the victim, and his friend David Brown went to the Fifty Yard Line bar in Indianapolis. Brown introduced Golden to appellant and they sat together at a table where Golden displayed a large amount of money and disclosed the fact that he had marijuana on his person. They also met Rick Asbury and Herb Underwood, longtime friends of appellant.

Asbury testified that they stayed at the bar until it closed, then went to the parking lot and smoked marijuana. Asbury stated that he then passed out in the back seat of appellant's car and was awakened when

appellant drove the car down a bumpy road. Underwood was in the front passenger seat and Asbury and Golden were in the back seat. The car stopped in a remote area and Underwood got out and pulled Golden from the car. Appellant stood in front of the car with Underwood and Golden. Appellant and Underwood told Golden to give up the "pot." Appellant then hit Golden's face with his fist twice and Golden fell to the ground. Asbury saw appellant and Underwood kick Golden. Underwood then dragged Golden a few feet and stripped off all of his clothing as appellant stood nearby. Underwood removed items from Golden's pants pocket and put them into his own. He then grabbed Golden's penis and lifted him off of the ground as Golden screamed.

As Golden lay curled up on the ground, Asbury kicked him and told him to get up. He took Golden's clothes and scattered them among the trees and brush. When Asbury returned to the car, appellant asked him for his knife. Appellant then pointed the knife at Golden's throat and told him that if he knew what was good for him, he would not say anything.

Appellant and Asbury returned to the car, and Underwood, who was standing near the front of the car, stated that he had to kill Golden because he could identify them and he did not want to go to prison. Asbury testified that appellant got into the trunk, removed a tire iron, and that appellant and Underwood walked over to Golden and they both beat him with the tire iron. When they came back to the car, Underwood was carrying the tire iron and told Asbury he had to hit Golden. Asbury stated that he tapped Golden twice on the shoulder with the tire iron but he already was dead.

Appellant, Underwood, and Asbury got into the car and drove away. As they drove, appellant stated that he "got a good shot at him at the back of the head," and Underwood said, "I bet we killed a man tonight." Underwood stated their alibi would be that they got in a fight at Picadilly's and then went to Waffle House, and appellant agreed. The muffler had become

loose on appellant's car so they stopped at a service station where appellant repaired it.

Asbury stated that he received $20 of the money taken from Golden and appellant received $30.

Beverly Cobb, appellant's girlfriend, testified that appellant's mother told her that when appellant came home early on the morning of June 5, 1984 he wiped off the tire tool and asked his mother to wash his clothes.

Cobb stated that appellant's mother said there was blood on his clothing. Cobb also testified that appellant had scabs on his knuckles which she had never seen. She testified that appellant told her that a man had been killed and he had hit him once with his fist, once with the tire tool, and kicked him once. He gave her $20 which he first said he had earned painting but later said it had come from the robbery. She further testified that appellant told her that he participated in an agreement outside the Fifty Yard Line bar to rob Golden. He said Golden was beaten to death because he would not shut up.

On June 5, 1984, appellant's body was found on a Conrail access road near Rockville Road in Marion County. Investigators found a receipt bearing Golden's name and address several feet away from his body.

After police connected Asbury to the crime, he agreed to testify for the State in exchange for a plea bargain. Police found Golden's wallet in the dumpster at the service station where appellant had fixed his muffler.

A forensic pathologist testified that Golden suffered blunt force injuries to the head from the tire iron, internal organ injuries and internal bleeding from being stomped in the chest and abdomen, manual strangulation, a laceration of the penis which tore large blood vessels, and that each injury by itself would have been fatal.

Appellant argues the trial court erroneously denied his motion to dismiss the State's request for the death penalty.

The information in appellant's case was filed on July 3, 1984. The record shows

that appellant was offered a plea agreement on or about July 25, 1984, which offer would be rescinded on August 13, 1984. Appellant declined the offer and the State filed the information requesting the death penalty on October 16, 1984. Appellant believes his motion to dismiss the death penalty should have been granted on the ground that the State practiced vindictive prosecution by filing the request in response to his rejection of the plea agreement.

■ Prosecutorial vindictiveness may be presumed in certain cases in which a defendant is punished for doing something the law plainly allowed him to do. *United States v. Goodwin* (1982), 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74.

■ Appellant asserts the prosecutor filed the request for the death penalty to punish him for refusing the plea agreement. However, the record does not support his contention. During the hearing on his motion to dismiss, the prosecutor stated that as soon as the case was filed, defense counsel was notified that his client was being considered as a candidate for the death penalty and that the death penalty request already had been filed against his codefendant. He stated that subsequent to filing the July 25, 1984 information, Asbury came forth and gave more information about the murder which further implicated appellant in the crime. The prosecutor then contacted defense counsel and informed him that it appeared that appellant was more involved in the crime, and they were filing a request for the death penalty. Asbury testified that in his first two statements to police he did not tell them everything he knew about the crimes.

In *Williams v. State* (1982), Ind., 430 N.E.2d 759, we held that nothing in the Constitution prohibits prosecutorial discretion in charging the death penalty. We rejected appellant's argument that the power to use the threat of the death penalty in the plea bargaining process was unconstitutional and noted that the death sentence may be imposed after a guilty plea or a waiver of jury trial, as well as after a plea of not guilty followed by a jury trial. *Id.*

at 763. The filing of the death penalty request after appellant's rejection of the plea agreement did not amount to vindictive prosecution.

■ Appellant contends the trial court erred in denying his motion for severance. He first argues that his motion for severance should have been granted because he and his codefendant Underwood did not have a cohesive defense, but instead each defended himself by accusing the other of being the principal perpetrator of the crimes. Appellant believes separate trials were in order because Underwood joined with the prosecution in attacking him by attempting to discredit each witness who testified on his behalf.

■ The decision to grant or deny a motion for separate trials is within the discretion of the trial court. To determine whether the trial court abused its discretion, we will consider events which actually occurred at trial and not the allegations in the motion for severance. *Parr v. State* (1987), Ind., 504 N.E.2d 1014.

■ The mere fact that one defendant implicates another does not entitle the latter to a separate trial. *Baysinger v. State* (1982), Ind.App., 436 N.E.2d 96.

■ Furthermore, whether to permit cross-examination to test the credibility of a witness is within the trial court's discretion. *Brooks v. State* (1973), 259 Ind. 678, 291 N.E.2d 559. We find no abuse of discretion in denying appellant's motion for severance on these grounds.

■ Appellant also argues his motion for severance should have been granted because the jury was prevented from considering testimony from Gerald Loy that Underwood told him that appellant's participation in the crimes was minor. The record shows that appellant called Loy to the stand and asked him to state what Underwood told him about appellant's acts at the scene of the crime. Both the State and Underwood objected on the ground that the testimony was hearsay and the declarant, Underwood, was unavailable for cross-examination due to his election not to

testify. Appellant asserts the jury should have been allowed to consider Loy's testimony and a separate trial should have been granted.

He makes a similar argument regarding testimony from Detective Davis, in that appellant asserts Davis's testimony was limited due to the fact that Underwood failed to testify. The gist of appellant's argument is that had Underwood testified, exculpatory evidence would have been admitted at trial. The following criteria are considered to determine whether depriving a defendant the opportunity to use a codefendant's exculpatory testimony amounts to prejudice resulting in the denial of a fair trial: 1) the movant should show that the testimony would be exculpatory in effect; 2) the movant should show to the court's satisfaction the likelihood that the codefendant will testify; and 3) the movant should show the exculpatory nature and significance of the desired testimony to the movant's defense, or the extent of potential prejudice to him if he is tried without the opportunity to elicit the codefendant's testimony. *United States v. Echeles* (7th Cir. 1965), 352 F.2d 892; *Johnson v. State* (1983), Ind., 445 N.E.2d 107.

Appellant testified on direct examination that Underwood told him that he would testify at trial and say that appellant did not kill anyone and should not be tried. However, at trial Underwood asserted his Fifth Amendment right and did not testify. Considering Underwood's refusal to take the stand, we cannot find that appellant has demonstrated the likelihood that Underwood would testify in separate trials. Therefore, we find no abuse of discretion in denying appellant's motion for severance.

Appellant argues his motion for severance should have been granted because the testimony concerning the distinctive roles of each defendant was conflicting in many respects. He cites instances in which Asbury's testimony inculpated him while his own testimony was exculpatory. He believes these discrepancies in testimony made it confusing to the jury and inhibited their recollection as to who did certain acts

and that they may have attributed actions of one defendant to the other.

The trial court does not abuse its discretion by refusing to order separate trials on the basis that a defendant may be found guilty by association where the evidence presents clearly-defined and distinctive roles for each defendant and there is no confusion over who may have spoken certain words or may have done certain acts. *Walker v. State* (1983), Ind., 444 N.E.2d 842. Asbury's testimony was clear and definitely assigned certain acts and words to either Underwood or appellant. Appellant's testimony simply refuted Asbury's statements concerning his own part in the crimes. Upon hearing the conflicting evidence, it was the jury's duty to weigh the credibility of the witnesses. Though the evidence was inconsistent, it was not unclear or confusing. We find no abuse of discretion in denying appellant's motion for severance.

Appellant contends his motion for change of venue due to pretrial publicity should have been granted.

Initial media accounts of Golden's murder described it as a homosexual murder. Extensive publicity resulted when appellant escaped from the Marion County Jail and the public was warned that he was armed and dangerous. The record contains several pages of transcripts from television and radio news accounts as well as newspaper articles about the investigation of the murder and appellant's escape from jail.

The disposition of a motion for change of venue rests within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Linthicum v. State* (1987), Ind., 511 N.E.2d 1026. To prevail on appeal, the defense must show the existence of prejudicial publicity and that jurors were unable to set aside their preconceived notions of guilt and render a verdict based upon the evidence. *Burdine v. State* (1987), Ind., 515 N.E.2d 1085.

The State points out that during *voir dire*, sixty-seven prospective jurors were interviewed and nine of them expressed

that they had a vague recollection of something about the case but that they could decide the case on the evidence. All nine of these candidates were excused either peremptorily or for cause. Therefore, no juror was seated who expressed he or she had been exposed to pretrial publicity. Because appellant has not shown that jurors were unable to render a verdict based upon the evidence, we find no error. *Id.*

■ Appellant claims his motion to suppress his statement was erroneously denied. Upon his arrest, he gave a statement to police in which he stated that he was at the scene of Golden's murder but it was Underwood alone who killed him and he was only a bystander. He stated that he hit Golden's body but he was already dead at the time. He now contends his statement was involuntary because he was intoxicated when he gave it, he was promised leniency by police if he cooperated, and he was promised that his girlfriend would not be charged if he cooperated. He gave testimony supporting these allegations at the motion to suppress hearing.

■ Admissibility of a statement or confession is controlled by determining from the totality of the circumstances whether the statement was given voluntarily and not through inducement, violence, threats, or other improper influences which would overcome the free will of the accused. On appeal, this Court will review the question as we do other sufficiency matters and we will not reweigh the evidence. *Massey v. State* (1985), Ind., 473 N.E.2d 146.

At the motion to suppress hearing, Detective Davis testified that in his opinion appellant was not intoxicated when he gave his statement because he did not smell of alcohol and he walked, responded, and reacted well. Detective Davis also testified that although appellant was told that eventually the prosecutor's office and the trial court would be aware that he gave a statement, he was not told that it would be in his best interest or certain charges would not be filed against him if he made a statement. He also stated he did not recall having any conversations with appellant regarding his girlfriend or the possibility of filing charges against her.

Appellant said in his statement that prior to giving the statement he was advised of his *Miranda* rights and that he understood them. Detective Davis testified that appellant was advised of his rights at the time of his arrest and again at the detective's office one-half hour later. Appellant also signed a waiver of rights form which stated that he was knowingly and voluntarily waiving his rights absent promises, threats, or coercion.

It was for the trier of fact to determine the credibility of the witnesses. In light of the evidence supporting the trial court's ruling, we find appellant's motion to suppress was properly denied. *Coleman v. State* (1986), Ind., 490 N.E.2d 711.

■ Appellant argues he was denied his right to counsel when the trial court denied his counsel's motion to withdraw his appearance.

On July 10, 1985, the State filed a petition requesting use immunity for Onie Huffman, appellant's mother. The petition also requested the court to compel her to testify. On July 11, 1985, the State filed its notice of possible conflict of interest by defense counsel, alleging that Onie Huffman was being represented by appellant's defense counsel in a charge of obstruction of justice. On the first day of trial, appellant's counsel stated that the State's petitions alerted him to the fact that they intended to call Onie Huffman as a witness and as a result, he requested leave of the court to withdraw as appellant's counsel.

The State pointed out that the possibility of a conflict had existed for a long time, appellant's case had been delayed due to continuances, and defense counsel should withdraw from Onie Huffman's case and not appellant's. The trial court denied his motion to withdraw from appellant's case, stating that if a problem arose when Onie Huffman testified, it would be dealt with at that time. Appellant contends his convictions must be reversed because his counsel was unable to exercise free judgment due to the conflict of interest. He cites rele-

vant sections of the *Code of Professional Responsibility.*

■ Whether to grant a defendant's request for change of counsel immediately before trial is a matter of trial court discretion. Such motions made on the morning of trial are particularly disfavored because granting them causes substantial loss of time for jurors, witnesses, lawyers, and the court. The trial court's determination on the issue will be reversed only when it constitutes a clear abuse of discretion which prejudices the defendant's right to a fair trial. *Roberts v. State* (1986), Ind., 500 N.E.2d 197. A motion for change of counsel made on the day of trial has been held to be *per se* untimely. *Jackson v. State* (1985), Ind., 483 N.E.2d 1374.

The record indicates that during the hearing on the request to grant Onie Huffman immunity, she received new counsel and was no longer represented by appellant's counsel. Under these circumstances, we find no abuse of trial court discretion in denying the motion to withdraw. *Roberts, supra.*

■ Appellant argues the trial court erred in denying his motion to suppress the photographic lineup. He states that the photographic lineup was unduly suggestive because only photographs of himself and Underwood depicted persons with facial hair, and the photographs themselves appeared to be "mug shots." He concludes that the admission of the photographic lineup and identification testimony referring to it was prejudicial error.

State's Exhibits 15 and 16 each contained photographs of six white males. Holes had been cut out of manila folders which were placed over the photographs to reveal only the heads and necks of the subjects. Both exhibits were shown to witnesses at the same time for identification purposes. More than half of the subjects had either a beard, a mustache, or light facial hair, and they all appeared to be about the same age.

■ "Mug shots" are inadmissible when they show information which implies that the defendant has a prior record. *Menifee v. State* (1987), Ind., 512 N.E.2d

142. However, photographs which bear no name, identification number, or indication of prior arrests do not fall within the classic definition of "mug shots." *Dickson v. State* (1988), Ind., 520 N.E.2d 101.

The photographs in appellant's lineup contained no indication of the subjects' prior arrests and they were sufficiently similar in appearance to constitute a proper lineup. The photographic lineup and the testimony referring to it were properly admitted.

■ Appellant claims the admission of certain photographs into evidence resulted in reversible error. Admitted were photographs of the crime scene and the body as they were found by police. There were also pre-autopsy photographs which showed the victim's wounds and how the tire iron fit into the wounds. Appellant believes the photographs were grisly and offered only to inflame the passions of the jury, and their prejudicial impact outweighed their probative value.

■ Photographs of a victim's corpse in a homicide case are relevant to prove the identity of the victim and as an aid to understanding the pathologist's findings on the cause of death. Also, photographs showing the victim in his or her natural state following death and before the body has been altered by an autopsy are relevant and admissible. *Id.*

A police officer and a pathologist testified that the photographs accurately represented the subject intended to be portrayed. The admission of a relevant photograph becomes reversible error only if its tendency to inflame the passions of the jury due to its gruesomeness clearly outweighs its relevancy. *Stamps v. State* (1987), Ind., 515 N.E.2d 507. The photographs were relevant to show the scene of the crime and the identity of the victim. They corroborated the testimony of the witnesses as to the facts surrounding the crime and the victim's causes of death. We find no error in admitting the photographs.

■ Appellant contends that aerial photographs and a videotape of the crime scene were erroneously admitted into evi-

dence. Witnesses testified that there was more vegetation at the scene of the crime than on the day the photographs were taken. Appellant asserts that the discrepancy in the amount of vegetation prohibited the photographs from being true and accurate portrayals of what they purported to depict, and were thus inadmissible.

■ The admission of photographic evidence is within the discretion of the trial court. *Boze v. State* (1987), Ind., 514 N.E.2d 275. Photographs of a crime scene are generally admissible because they are competent and relevant aids by which a jury can orient itself to best understand the evidence presented. *Hubbard v. State* (1987), Ind., 514 N.E.2d 1263. Before a photograph is admitted, however, it must be established that it is a true and accurate representation of the things it is intended to portray. *Fleenor v. State* (1987), Ind., 514 N.E.2d 80.

Police officers testified that the photographs and the videotape accurately depicted the scene except for the amount of vegetation. We fail to see how appellant was prejudiced by the disparity in the amount of foliage in the photographs. We find no abuse of trial court discretion in admitting the exhibits. *Craig v. State* (1987), Ind., 515 N.E.2d 862.

■ Appellant also believes a diagram of the crime scene was erroneously admitted. Detective Davis testified that the diagram fairly and accurately represented the crime scene as he observed it on June 5, 1984, and it better demonstrated the location of the body and the property found nearby than photographs would. Later, appellant's counsel asked Detective Davis if the body in the drawing was the victim and whether it was a true and accurate depiction of the position in which the victim was found on the road, and he said, "Yes." Defense counsel then asked him, "Wouldn't a photograph be a little more accurate than that?" and he said, "Yes." Appellant believes that because Detective Davis admitted a photograph would be a more accurate depiction of the body's position, the diagram should not have been admitted.

■ We find the diagram of the crime scene was properly admitted. Even a diagram not drawn to scale may be admitted if it is sufficiently explanatory or illustrative of relevant testimony to be of potential help to the trier of fact. *Taylor v. State* (1987), Ind., 511 N.E.2d 1036. The diagram was helpful to the jury because, unlike photographs of the scene, it showed where both the body and certain property were located. We find no abuse of discretion.

■ Appellant argues the trial court improperly refused his proposed instruction which stated that the jury should consider the defendants as individuals and the evidence against each defendant separately.

■ When we review a trial court's refusal to give an instruction, we consider: 1) whether the tendered instruction was a correct statement of the law; 2) whether there is evidence to support giving the instruction; and 3) whether the substance of the tendered instruction was covered by other instructions given by the court. *Gross v. State* (1987), Ind., 506 N.E.2d 17.

The record shows that the jury was instructed that there are two defendants in the case and each defendant is to receive separate consideration as to each charge against him. Also they were instructed that in determining whether a defendant was a member of a conspiracy, the jury should consider only his acts and statements, and he cannot be bound by the acts or declarations of other participants until it is established that a conspiracy existed and he was one of its members.

Because the subject of appellant's tendered instruction was covered by instructions actually given at trial, we find no error in refusing appellant's tendered instruction. *Id.*

■ Appellant argues the instruction given on the defense of intoxication was inadequate and his tendered instruction should have been given instead.

The instruction given by the court states that intoxication is a defense if the defendant proves intoxication prohibited him from forming the specific intent necessary to commit the crime. This adequately cov-

ered the subject matter of appellant's tendered instruction. We thus find no error. *Id.*

■ Appellant argues that the trial court's refusal to instruct the jury on lesser included offenses warrants a reversal of his convictions. He tendered instructions on the offenses of battery, battery with a deadly weapon, and robbery.

■■ The test for determining whether it was error to refuse an instruction on a lesser included offense is: 1) whether the language of the statute and the charging document necessarily included the lesser offense in the greater, and 2) whether evidence was introduced at trial to which the included offense instruction was applicable. *Roland v. State* (1986), Ind., 501 N.E.2d 1034. The evidence must be subject to the interpretation not only that the lesser offense was committed, but also that the greater offense was not. *Gordon v. State* (1986), Ind., 499 N.E.2d 228.

Because the evidence in appellant's case is not subject to the interpretation that the greater offense of felony murder was not committed, we find no error in the refusal of his tendered instructions.

■ Appellant contends he was entitled to a new sentencing hearing because the trial court improperly emphasized the fact that the jury's role in sentencing was merely advisory, and the ultimate responsibility in determining the appropriateness of the death penalty lies with the court. He cites *Caldwell v. Mississippi* (1985), 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 in which the defendant's death sentence was vacated by the Supreme Court. During the sentencing phase of that case, defense counsel emphasized to the jury that they should confront the gravity and responsibility of calling for another person's death. In response, the prosecutor urged the jury not to view itself as finally determining whether the defendant should die because a death sentence would be reviewed for correctness by the Mississippi Supreme Court. The United States Supreme Court held that it is constitutionally impermissible to rest a death sentence on a determination made by a jury who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere.

Appellant cites numerous sections in the record in which he asserts the jury was told that the responsibility for determining the appropriateness of the death penalty rested with the trial court and not the jury. Accordingly, he asserts that he is entitled to a new sentencing hearing because the trial court and prosecutor de-emphasized the jury's responsibility in its consideration of the death penalty.

All of the statements made to the jury about which appellant complains occurred during *voir dire*. During *voir dire*, the prospective jurors were asked whether they had philosophical or religious beliefs which would prohibit them from recommending the death penalty. On several occasions, they were told by the trial court or counsel that if one or both defendants were found guilty of a crime for which the death penalty may be appropriate, they would be asked to consider the death sentence as an alternative sentence. They were told that their determination would be a recommendation to the trial court judge, and the judge might or might not follow their recommendation. However, each time they were told that their determination was a recommendation, they were told that by law the trial court must give great weight to their recommendation. They were also told on several occasions that their decision was of grave importance and because they were considered a representative group of the people of the state of Indiana, the trial court judge would give very serious consideration to their recommendation.

Appellant's case is distinguishable from *Caldwell* because the trial court and counsel were careful in stating that the jury's recommendation to the trial court was of extreme importance and would be seriously considered by the trial court. Because the comments to the jury were correct statements of the law, we find no reversible error. *Averhart v. State* (1984), Ind., 470 N.E.2d 666.

■ Appellant argues the trial court erroneously allowed the jury to take the information with them into the jury room while deliberating. He asserts that because people are likely to believe that an accused is guilty if the prosecutor filed charges against him, and because the information was signed and sworn, the information's presence in the jury room was prejudicial to him.

The jury had been fully apprised of the charges against the defendants and the information had been read to them twice. They had been instructed that the fact that an information was filed is not evidence of their guilt and should not be considered by them as any evidence of guilt. They were told that an information is merely a formal, written charge by which a person is accused of the commission of a crime and upon which he is tried. Additionally, they were instructed that the information was being submitted to them only for the purpose of informing them of the nature of the charges, and it was not to be used or considered by them as evidence of any fact in issue.

We cannot determine that, based on appellant's speculation that the jury was influenced by the information, they disregarded the instructions and determined his guilt upon seeing the document in the jury room. Because appellant has shown no prejudice, we find no reversible error. *Wagner v. State* (1985), Ind., 474 N.E.2d 476.

■ Appellant asserts his convictions must be reversed because the trial court disallowed an expert to use certain exhibits while he testified.

Appellant elicited testimony from a doctor concerning the effects of various amounts of alcohol on a person's behaviour. The expert was not allowed to use appellant's proposed Exhibits K and N. Exhibit K consisted of a chart detailing the typical symptoms noticeable in a person as he or she consumes an increasing amount of alcohol. Under the chart, text material was underlined which stated that a person under the influence of alcohol is in a euphoric mood, has loss of restraint, and may be careless and reckless. Exhibit N consisted of a chart demonstrating the increased probability of involvement in an automobile crash as a driver's blood alcohol content rises.

The expert was allowed to use Exhibits L and M during his testimony. Exhibit L was a chart demonstrating the various stages of behaviour which result from the increased states of intoxication. Exhibit M was a diagram of the brain which showed the effect of alcohol on the various sections of the brain and the physical symptoms resulting from the alcohol intake.

The trial court refused Exhibit N because the subject of traffic accidents was irrelevant to appellant's case. Exhibit K was refused because it was repetitive of Exhibit L, which was in the trial court's opinion easier to understand than Exhibit K. Also, the trial court found that Exhibit K contained conclusive generalities which did not necessarily pertain to appellant. Appellant asserts that his convictions must be reversed because the expert was not allowed to utilize Exhibits K and N during his testimony.

■ The trial court has wide latitude in ruling on the admissibility of the evidence in determining its relevancy. *Smith v. State* (1984), Ind., 465 N.E.2d 702. We agree with the trial court that the traffic accident chart was irrelevant to appellant's case. Additionally, we fail to see how appellant was harmed by the exclusion of Exhibit K because its topic was substantially covered by Exhibit L, which was more concise and easier to comprehend than Exhibit K. Also, Exhibit K contained an underlined portion which may have been unduly emphasized to the jury. We find no abuse of trial court discretion in refusing the exhibits.

■ Appellant also argues the trial court erroneously sustained the State's objection to a question asked of the expert. Appellant asked him to estimate the blood alcohol content of a person weighing 139 pounds, which was appellant's approximate weight, after consuming the same number of beers appellant consumed the day of the

murder and after eating the same amount of food appellant had eaten that day. The expert testified that the blood alcohol content of that person would be approximately .15 to .12. Soon thereafter, appellant asked him at what level of blood alcohol content does the probability exist that an individual has an inability to form specific intent, and the State's objection to the question was sustained. Appellant contends the expert's answer was crucial to his defense of intoxication.

■ The questions posed to the expert amounted to a request for his opinion as to whether appellant had the specific intent to commit the crimes for which he was charged. The question of a person's intent at the time of the commission of a crime, not related to an issue of insanity, is a question of fact for the jury and not a proper subject for expertise. *Reichard v. State* (1987), Ind., 510 N.E.2d 163. Because the question was an invasion of the province of the jury, we find no error in sustaining the State's objection.

■ Appellant argues he was deprived of adequate and effective cross-examination which rendered his trial unfair. During cross-examination of Beverly Cobb, defense counsel asked her whether she told Detective Davis to "burn the mother fucker," meaning appellant. She said, "Yes," and then defense counsel asked her, "That's what you're here to do today, isn't it?" to which the State objected. The trial court sustained the objection and admonished the jury that defense counsel's statement was improper and they must disregard it. They were told that they must weigh the testimony of the witnesses and not questions asked by attorneys.

Defense counsel went on to ask Cobb whether she asked appellant to divorce his wife and marry her, whether she offered to pay for the divorce, and whether appellant soon thereafter took her off his jail visitation list. Cobb also was questioned about the fact that in her first statement to police she did not give them all the information she knew about the case, but later told them that appellant had scabs on his hands the day after the murder, he asked his mother to wash his bloody clothes, and that she knew appellant hit and kicked Golden. Defense counsel then asked her whether she did not think the information would help "burn" appellant, at which time the State objected and made a motion in limine regarding further references to the witness's desire to "burn" appellant. The trial court granted the motion on the basis that the jury had heard the phrase used by the witness twice already and the defense had ample opportunity to bring out the nature of Cobb's relationship with appellant. Appellant believes he was unduly limited in exploring Cobb's bias during cross-examination.

■ The trial court is allowed to control the conduct of cross-examination, and we will find reversible error only where there is an abuse of discretion. *Jones v. State* (1986), Ind., 500 N.E.2d 1166. The record shows that appellant was allowed to cross-examine Cobb and reveal that her relationship with appellant had faltered. Appellant questioned Cobb's credibility in bringing out the fact that her story to police had changed and that she may be motivated to testify against appellant because their relationship had failed. We find no abuse of trial court discretion in granting the State's motion in limine.

■ Appellant argues the trial court erroneously prohibited his witness from providing exculpatory testimony. Gerald Loy, a former cellmate of codefendant Underwood, was asked on direct examination to testify about what Underwood told him appellant did at the scene of the crime. The State objected on the ground that the evidence was hearsay and that Underwood was unavailable for cross-examination because he elected not to testify. Their objection was sustained and appellant made an offer to prove outside the presence of the jury. In the offer to prove, Loy testified that Underwood told him that appellant hit Golden only one time in the jaw immediately after Underwood pulled him out of the car. Loy said Underwood never indicated that appellant hit Golden with the tire tool nor agreed to rob him. He said that Underwood said that after appellant

hit Golden in the jaw, everything else that happened to Golden was done by Underwood. During earlier cross-examination, Loy testified that he also had shared a cell with appellant, appellant had put a tattoo on his arm, and he had given a statement regarding what Underwood told him with the hope that appellant's attorney would help him get his own sentence reduced.

The testimony appellant gave on direct examination was similar to the substance of Loy's testimony in the offer to prove. Appellant contends the exclusion of Loy's testimony was error because, though it was hearsay, it was admissible as a statement against interest by Underwood, citing *Washburn v. State* (1986), Ind., 499 N.E.2d 264.

In *Chambers v. Mississippi* (1973), 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297, the Court held that the defendant was denied a fair trial when the trial court held that he could not impeach his own witness, Mac-Donald, who had previously confessed to committing the crime, and disallowed three of MacDonald's friends to present hearsay testimony that MacDonald confessed committing the murder. The Court held that when the defendant's Sixth Amendment right to present a defense collides with the State's interest in promulgating rules of evidence to govern the conduct of its trials, the merits of the respective positions must be weighed, then the State's interest must give way to the defendant's rights if its rules are "mechanistically" applied to deprive the defendant of a fair trial. *Id.* at 302, 93 S.Ct. at 1049, 35 L.Ed.2d at 313.

In assessing the reliability of the hearsay testimony, the Court in *Chambers* found that the declaration against interest contained a "persuasive assurance of trustworthiness" because: 1) the confession was spontaneously made to close acquaintances shortly after the murder occurred; 2) each statement was corroborated at trial by other independent evidence, including testimony from an eyewitness to the murder; 3) the confession was self-incriminating and unquestionably against penal interest; and 4) the declarant, MacDonald, was available for cross-examination by the State at trial.

*Id.* at 300–01, 93 S.Ct. at 1048, 35 L.Ed.2d at 312.

The hearsay evidence offered in appellant's case does not offer the same indicia of trustworthiness as that in *Chambers.* Underwood's alleged confession did not occur shortly after the murder, nor was it made to a close acquaintance. (*See Sharlow v. Israel* (7th Cir.1985), 767 F.2d 373 in which the witness was held to not be a "close acquaintance" because he was a mere cellmate and no evidence existed which established a closer relationship to the declarant). Additionally, the only evidence which corroborated Loy's testimony came from appellant, who also had shared a cell with Loy, and whose testimony was self-serving. Also, the trustworthiness of the alleged confession fades when one considers the evidence that Loy hoped to better his situation by testifying in appellant's case. Finally, the declarant was not available to testify due to his invocation of his Fifth Amendment right against self-incrimination. Because the hearsay evidence did not meet the standards established in *Chambers,* we find that its exclusion did not deny appellant a fair trial.

▮ Appellant argues the trial court improperly denied his motions for mistrial. He first moved for a mistrial during the testimony of Officer Davis, who was testifying concerning the statement appellant gave to police after he was arrested. The prosecutor asked Officer Davis to confine his testimony to what appellant said he did or said or what Asbury did or said. Officer Davis said appellant told him that when he was on an access road he took the tire tool from his trunk and tapped a man with it who was nude and already dead at that time. The prosecutor asked what proceeds appellant got from the incident and Officer Davis answered that he got $5 when he left and subsequently got $33 from Asbury. The prosecutor then asked Officer Davis whether appellant knew where Asbury got the money and he said, "Yes." When Officer Davis was asked from whom appellant received the money, appellant and Underwood moved for a mistrial on the ground that it was obvious that appellant

said in his statement that the money came from Underwood. Appellant complained that by deleting any references to Underwood, Officer Davis's testimony about appellant's statement was disjointed and impossible to cross-examine. The trial court admonished the jury to disregard the prosecutor's question.

Appellant now argues that by questioning Officer Davis about only a portion of his statement, the jury was given the impression that appellant only told the police part of the story, or that they were trying to hide something appellant told them.

We cannot join appellant in his speculation that the redacted testimony about his statement led the jury to believe that he was evasive or untruthful. The record shows that before questioning of Detective Davis, the prosecutor asked him to specifically confine his testimony only to information about appellant or Asbury. The jury already had heard Asbury's testimony in which he gave a full account as to who committed what acts during the incident. We find that appellant was not placed in a position of grave peril and his motion for mistrial was properly denied.

Appellant moved for a mistrial again when the mother of the victim cried in the courtroom and then left the room. After appellant moved for a mistrial, he requested that the victim's family be removed from the courtroom. The trial court found that the show of emotion was of minimal consequence, but the victim's relatives were told that if another outburst occurred they would be removed from the courtroom. The jury was admonished to disregard the emotional outburst.

Usually an admonishment to the jury is considered adequate. *Scott v. State* (1987), Ind., 510 N.E.2d 170, *cert. denied*, 484 U.S. 978, 108 S.Ct. 492, 98 L.Ed.2d 490. We find the trial court's admonishment to the jury and the audience cured any prejudicial impact upon appellant's case.

Appellant renewed his motion for mistrial when a high school student in the spectator section became dizzy and had to be escorted from the courtroom. Appellant contended that the outburst was a show of emotion which prejudiced him in the eyes of the jury.

The trial court determined that the incident had no connection with the case and overruled the motion. We agree with the trial court that appellant has not shown that he was placed in a position of grave peril to which he should not have been subjected. *Bedwell v. State* (1985), Ind., 481 N.E.2d 1090.

Appellant also moved for a mistrial on the ground that jurors had seen him in lockup and wearing handcuffs. During a hearing on the motion, Underwood testified that one juror saw him behind bars and said, "They're in there," and another replied, "No, I think they are still in the courtroom." Appellant argues the incident precluded the jury from presuming his innocence.

During the hearing on the motion, the trial court determined that appellants had not been prejudiced because the jurors knew the defendants were charged with murder and the law provides no bond for those charged with murder. We held in *Jenkins v. State* (1986), Ind., 492 N.E.2d 666 that because reasonable jurors could expect a defendant to be in police custody, he was not entitled to a reversal when jurors saw him handcuffed absent a showing of actual harm. We find no reversible error.

Appellant contends his motion for mistrial should have been granted on the basis that two jurors took notes during final argument. Upon his motion, the trial court commented that the jurors could take notes if they wanted to.

Whether jurors may take notes is a matter of trial court discretion, and clear error must be shown to establish an abuse of discretion. *Maxie v. State* (1985), Ind., 481 N.E.2d 1307. We find that appellant has not made such a showing, and no error occurred in the denial of his motion for mistrial.

Appellant asserts that even if this Court finds no basis for the granting of a

mistrial in his case, the cumulative effect of the alleged errors which were the grounds for his motions for mistrial prejudiced him. Where trial irregularities standing alone do not amount to error, they cannot gain the stature of reversible error taken together. *Stonebraker v. State* (1987), Ind., 505 N.E.2d 55.

■ Appellant argues the trial court erroneously granted the State's motion in limine, which prohibited the admission of evidence regarding the plea agreement offered to appellant. Appellant contends that the offer should have been put before the jury because it could have served as a mitigating circumstance for sentencing purposes under Ind.Code § 35–50–2–9(c)(8).

Indiana Code § 35–50–2–9(c)(8) and *Lockett v. Ohio* (1978), 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 require the trial court to consider any relevant mitigating evidence during the penalty phase; however, a defendant is not given carte blanche to introduce any evidence concerning the death penalty. The trial court may exclude as irrelevant evidence not bearing on the defendant's character, prior record, or the circumstances of his offense. *Spranger v. State* (1986), Ind., 498 N.E.2d 931, *cert. denied*, 481 U.S. 1033, 107 S.Ct. 1965, 95 L.Ed.2d 536.

We fail to see how appellant was prejudiced by the exclusion of testimony concerning the plea offer. The record shows that when the State gained more information establishing appellant as a major participant in the crimes, the prosecution reevaluated appellant's case and conformed the penalty request to the facts of the case. Evidence of the prior offer made before the prosecutor was fully apprised of the facts would not have been a reflection on appellant's character, prior record, or circumstances of his offense. We find no error in granting the motion in limine.

■ Appellant argues the trial court failed to give appropriate weight to certain mitigating circumstances in sentencing him. He contends substantial evidence existed of his intoxication at the time of the crimes and the trial court failed to give weight to this mitigating circumstance.

Appellant recognizes that the weighing of aggravating and mitigating circumstances by the trial court is discretionary, and the trial court is not required to believe a defendant's proposed mitigating circumstances. *Lowery v. State* (1985), Ind., 478 N.E.2d 1214, *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 900.

The trial court's written finding stated that the nature of the crime constituted aggravating circumstances and that appellant's use of alcohol and/or drugs at the time of the offense was a mitigating circumstance. However, the court found that the aggravating circumstances outweighed the mitigating circumstance.

The court further found that because appellant was able to operate a vehicle, had the physical coordination to effectuate the crimes, and had the ability to partake in the planning of the crime and the creation of an alibi, his intoxication was not a mitigating factor. We find the trial court sufficiently articulated the balancing of the aggravating and mitigating circumstances.

Appellant also argues the trial court failed to consider as a mitigating circumstance the fact that his participation in the incident was minor. In view of the above evidence, there was ample evidence for the court to determine his participation was far from minor.

■ Appellant argues his sentencing hearing was faulty because the trial court refused to consider testimony from a public defender as a mitigating circumstance. The public defender was prepared to testify about other cases in which the facts were similar or, in her opinion, more grievous than those in appellant's case, but the death penalty was not requested or a plea bargain resulted. The trial court disallowed the testimony on the ground that a comparison of the cases based upon their naked facts was inappropriate because it failed to take into consideration the fact that the penalty assigned in each case was based upon a multitude of factors. Appellant argues the comparison of cases was a relevant mitigating factor under Ind.Code § 35–50–2–9(c)(7).

In *Pulley v. Harris* (1984), 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29, the Supreme Court rejected the argument that state supreme courts must compare an appellant's sentence with sentences imposed in similar cases and determine whether the sentence is proportionate. The Court held that there is no basis for requiring a comparative proportionality review by an appellate court in every case in which the death penalty is imposed and the appellant requests the review. We find the trial court acted properly in refusing to consider the public defender's testimony as a mitigating circumstance. *Fleenor, supra.*

■ Appellant contends the death penalty is inappropriate in his case because the evidence failed to establish that he had the intent to kill the victim. He reviews the actions of Underwood during the murder and robbery and argues that his own participation in the crimes was minor. He believes that the instructions informing the jury that a defendant cannot be bound by the acts of other participants in a conspiracy until it is established that a conspiracy existed and that he was one of its members gave the jury the impression that they could sentence him to death without ever finding that he had the intent to kill.

In *Martinez Chavez v. State* (1989), 534 N.E.2d 731, *reh'g denied*, 539 N.E.2d 4, this Court held that because the evidence indicated that Chavez's codefendant was the leader in the crimes and Chavez was clearly an accomplice, the death penalty was not an appropriate sentence for him. The evidence in appellant's case, however, implicates him as a principal. The jury heard detailed testimony from Asbury concerning appellant's participation and from appellant's girlfriend as to what he told her about his participation. We find the instructions in the case at bar adequately informed the jury to consider each defendant separately, and the evidence was sufficient to sustain the jury's finding that appellant committed the crime as charged.

■ Appellant argues the death penalty is cruel and unusual punishment as applied to his case because of his degree of intoxication at the time of the crimes. He asserts that he probably would not have participated in the incident but for the fact that he was intoxicated, and it is unconstitutional to punish an individual who lacks the ability to understand the consequences of his acts or conform his behavior to the law.

We noted above that the trial court considered appellant's degree of intoxication as a mitigating factor but decided it was outweighed by the aggravating factors. We find no error in assessing the death penalty.

Appellant argues the trial court failed to articulate sufficient circumstances for the assessment of the death penalty. In capital cases, the trial court must enter separate written findings. *Hill v. State* (1986), Ind., 499 N.E.2d 1103.

■ During the sentencing hearing, the trial court stated that the aggravating circumstance of intentionally killing the victim while committing robbery had been proven beyond a reasonable doubt, and each mitigating factor listed in Ind.Code § 35–50–2–9 was discussed as to whether it applied to appellant's case. Upon a finding that appellant's drug and/or alcohol use was the only applicable mitigating factor, the trial court found the aggravating factor outweighed the mitigating factor. We find the trial court's sentencing memorandum adequately reflects its finding, and we find no error.

■ Appellant asserts our statute allowing the imposition of the death penalty is unconstitutional. He cites *Furman v. Georgia*, (1972), 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 and *Zant v. Stephens* (1983), 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 for the proposition that the statutory aggravating factors must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder. Such a statutory scheme prevents the administration of the death penalty in an arbitrary and unpredictable fashion.

Appellant states that the jury was allowed to base his felony murder conviction

on the aggravating factor of killing while in the commission of a robbery. He also notes that the jury was allowed to utilize the same aggravating factor as the only basis for the imposition of the death penalty; thus he concludes there is no way to distinguish his capital case from any other felony murder case, and as such, the imposition of the death penalty is unconstitutional.

The two stages of our death penalty statute correspond with the two stages of a death penalty proceeding described by the United States Supreme Court as the "definition stage" and the "selection stage." *Davis v. State* (1985), Ind., 477 N.E.2d 889, 893, citing *Zant, supra* 462 U.S. at 878–79, 103 S.Ct. at 2743–44, 77 L.Ed.2d at 250–51. The Supreme Court in *Zant* stated:

"Our cases indicate, then, that statutory aggravating circumstances play a constitutionally necessary function at the stage of legislative definition: they circumscribe the class of persons eligible for the death penalty. But the Constitution does not require the jury to ignore other possible aggravating factors in the process of selecting, from among that class, those defendants who will actually be sentenced to death. What is important at the selection stage is an individualized determination on the basis of the character of the individual and the circumstances of the crime." (Footnote omitted.)

In the case at bar, the trial court clearly articulated the brutality of the killing and appellant's participation therein.

Indiana Code § 35–50–2–9 provides a categorical narrowing of persons eligible for the death penalty and an individualized determination on the basis of the character of the individual and the circumstances of the crime, in that the jury is allowed to consider any appropriate mitigating circumstance and the evidence introduced at the trial stage. We find that the death penalty statute does not fail to sufficiently narrow the class of persons eligible for the death penalty and it is not unconstitutional. *Williams, supra* at 765.

Appellant argues the evidence is insufficient to sustain his convictions. He first contends the evidence fails to establish that he put Golden in fear for the purpose of forcing him to relinquish property; thus his armed robbery conviction cannot stand.

Testimony established that appellant and Underwood agreed to rob Golden, beat him fatally, and took the items from his pockets. The proposition that it was Underwood who actually removed Golden's property from his pockets does not prevent appellant's robbery conviction from being sustained. An accomplice can be criminally held for everything done by his confederates, which was a probable and natural consequence of their common plan. *Harris v. State* (1981), Ind., 425 N.E.2d 154. We find the evidence is sufficient to sustain appellant's robbery conviction.

Appellant argues his murder conviction must be reversed due to the insufficiency of the evidence. He recites elements of his testimony in which he stated that he only tapped Golden twice with the tire iron when he was already dead and concludes no showing of his intent to kill was made.

Evidence established that appellant struck Golden with his fist, kicked him, and beat him with a tire iron. The use of a deadly weapon in a manner likely to cause death or great bodily harm is sufficient to show the requisite intent to kill. *Lee v. State* (1986), Ind., 498 N.E.2d 972. We find the evidence supports appellant's felony murder conviction.

Appellant contends his conspiracy convictions must be reversed because the evidence fails to establish the existence of an agreement. He states that the only evidence of an agreement came from his ex-girlfriend, and that her testimony should be inherently unreliable because she stated her intention to "burn" him. He gives other reasons to find her testimony unbelievable.

A conviction for conspiracy may rest on circumstantial evidence alone. The agreement, as well as the *mens rea* may be

inferred from circumstantial evidence, including overt acts of the parties in pursuance of the criminal act. *Isom v. State* (1986), Ind., 501 N.E.2d 1074.

Appellant argues his consecutive sentences for conspiracy to commit robbery and conspiracy to commit murder are erroneous because a single agreement to commit several unlawful acts cannot be punished by multiple convictions under a general conspiracy statute.

Appellant is correct in his assertion. When separate conspiracies are charged, the inquiry is whether there existed more than one agreement to perform some illegal act or acts. *Perkins v. State* (1985), Ind., 483 N.E.2d 1379.

The facts indicate that appellant and Underwood committed several criminal acts pursuant to a single conspiracy, and the imposition of separate sentences for Counts IV and V constituted multiple punishment for a single offense. The conviction and sentence under Count IV must be vacated.

Additionally, appellant argues he was improperly convicted of both armed robbery and felony murder because the felony murder arose from a killing in the commission of the robbery, and as such, the robbery merges into the felony murder conviction.

When the convictions for both felony murder and the accompanying felony of robbery are obtained, the defendant may only be sentenced for the greater charge. The robbery is a lesser included offense of the felony murder which merges into the felony murder conviction. *Eddy v. State* (1986), Ind., 496 N.E.2d 24. Appellant's sentence imposed for the separate robbery count must be vacated.

Additionally, appellant states that he was given a term of years for the felony murder and he was given the death penalty, which was improper. The record of the sentencing hearing shows that the trial court sentenced appellant to sixty (60) years for felony murder, then accepted the jury's recommendation that the death penalty be imposed. However, the written "Judgment of the Court" lists appellant's convictions then states that he shall suffer the death penalty but does not mention any additional sentences. Appellant is correct in his assertion that he cannot be punished twice for a single felony murder conviction of one victim. *Turner v. State* (1980), 273 Ind. 627, 407 N.E.2d 235.

The trial court did in fact merge the murder conviction. The record clearly supports the imposition of the death penalty in light of the nature of the offense and character of the offender.

This case is remanded with instructions to vacate appellant's conviction for conspiracy under Count IV and his conviction for robbery.

The trial court is affirmed as to the conspiracy to commit murder and felony murder and the imposition of the death penalty.

SHEPARD, C.J., and PIVARNIK, J., concur.

SHEPARD, C.J., concurring with separate opinion in which PIVARNIK, J., concurs.

DeBRULER, J., concurring in result and dissenting with separate opinion with which DICKSON, J., concurs in part.

DICKSON, J., dissents as to the conviction of murder and death sentence and concurs in all other respects.

SHEPARD, Chief Justice, concurring.

I write separately to describe why I believe that the trial court's refusal of Underwood's instruction on the lesser included offense of battery does not contravene the fourteenth amendment due process clause as interpreted in *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).

Under Alabama law, a defendant charged with murder-intentional killing is eligible for execution and one charged with felony-murder is not. Alabama's statute prohibits giving lesser included instructions in a trial on murder-intentional killing. *Id.*

at 627–630, 100 S.Ct. at 2384–2386. The Supreme Court noted the prevailing rule in the state courts that a defendant is entitled to instructions on lesser included offenses and cited this Court's decision in *Pruitt v. State* (1978), 269 Ind. 559, 382 N.E.2d 150. *Id.* 447 U.S. at 636 n. 12, 100 S.Ct. at 2389 n. 12. It held that prohibitions like Alabama's violate due process, at least in capital cases.

The statutory framework and the charging information under which Richard Huffman was tried present important differences. There is, of course, no statutory prohibition. The Supreme Court's recognition of Indiana's standard as a basis for holding Alabama's statute unconstitutional certainly suggests that we do not contravene *Beck* when we apply our rule about instructing on lesser included crimes.

The State charged that Huffman "knowingly killed" his victim (count I—murder) and that he "killed" the victim (count III—felony murder). Though the perpetrators took different positions concerning whose assaults on the victim finally killed him, there was no doubt that their combined inflictions caused the death. To justify an instruction on mere battery one would have to conclude that killers who announced a determination to kill the victim and beat him to death were plausibly not "aware of a high probability they were doing so." Refusing the battery instruction under these circumstances serves the purposes of our rule on lesser included offenses, a rule which affords due process according to the *Beck* Court.

PIVARNIK, J., joins in this concurrence.

DeBRULER, Justice, concurring in result and dissenting.

Appellant and co-defendant Underwood were charged in Count II with murder in that they knowingly killed the victim, Kerry Golden, by striking him, and were charged in Count III with felony-murder in that they killed the victim while committing or attempting to commit robbery. The death penalty count alleged a single aggravating circumstance, namely that appellant had intentionally killed the victim while committing or attempting to commit robbery. I.C. 35-50-2-9(b)(1). At the trial on these charges, appellant Huffman requested the court to give his tendered instructions on the lesser included offenses of battery and battery with a deadly weapon. The court refused to so instruct the jury.

Intent to kill is the element which distinguishes the form of murder alleged in Count II from battery with a deadly weapon. *Malott v. State* (1985), Ind., 485 N.E.2d 879. The evidence presented at trial going to appellant's state of mind was consistent with an intent only to touch. The testimony of Gerald Loy showed that co-defendant Underwood asked appellant Huffman for the keys to get the tire tool so that Underwood could "knock the man [Golden] out." Underwood told Loy that although he did hit Golden, he didn't mean to strike as hard as he did and did not mean to kill Golden. Underwood further told Loy that after delivering the blow, he checked the victim and, upon discovering that Golden was dead, he asked appellant Huffman to hit the victim one time. Huffman told Loy that he did hit the victim one time with the tire tool. The jury could have believed that Huffman was acting in a ritualistic fashion in so doing. One-time co-defendant Asbury testified that during the attack, Underwood pulled Golden out of the car, Huffman kicked Golden and hit his face twice, Underwood took Golden's clothes off and picked him up by his penis, and Huffman held a knife to Golden's throat saying, "If you know what's good for you, you won't say anything." Asbury testified further that Underwood told him out of Huffman's presence that Underwood had to kill Golden. Huffman testified that when Underwood demanded that he hit the victim with the tire iron, he believed that Golden was already dead. These facts, presented through both State and defense witnesses, confirm that the jury, given the opportunity, could have determined that appellant Huffman did not intend to kill the victim, but intended to batter the dead body. It was therefore error under Indiana law to refuse this lesser and included offense instruction.

This error in instructing the jury is constitutional in dimension and requires that

the death sentence be set aside. In *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), the Supreme Court held that it was unconstitutional to impose a death sentence after a jury verdict of guilty of a capital offense when the jury was not permitted to consider a verdict of guilty of a lesser included non-capital offense. That holding applies here, despite the parallel felony-murder charge. In *Beck*, the lesser included non-capital offense charge which the jury should have been, but was not, permitted to consider was an avenue by which the defendant could have avoided imposition of the death penalty. In the case at bar, the lesser included non-capital offense of battery with a deadly weapon would have provided a like avenue for avoiding imposition of the death penalty since a verdict of guilty of battery would have acquitted appellant of murder under Count II. This would also have precluded the finding of an intent to kill, which was an essential element of the lone aggravating circumstance upon which the prosecution based its claim for the death penalty.

Appellant also contends that the trial court committed error in refusing to allow the jury to consider his Exhibit O as a mitigating circumstance. It was a copy of a plea offer which was made to him by the prosecutor and which he rejected prior to the filing of the death count. Our statute provides that a mitigating circumstance is any one which is "appropriate for consideration." I.C. 35–50–2–9(c)(8). I take this to mean that any fact or event which tends to reflect favorably upon the defendant's character or which tends to diminish in any respect his participation in the offense should be heard. This legislative mandate as well as the Eighth Amendment enjoin a court to listen and consider all of the relevant words of persons who speak to defend themselves from the gallows. *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). What kind of a verbal standard of relevance is appropriate to apply so as to stop utterances at such a moment? In *Magley v. State* (1975), 263 Ind. 618, 641, 335 N.E.2d 811, 825, we said that, under normal circumstances, "[t]he fact that a piece of evidence makes an infer-

ence slightly more probable suffices to show its relevance." Experience dictates that the prosecution, partaking as it does of normal human decency, does not in normal circumstances make plea offers to the most culpable when several are facing charges for a single criminal episode. This plea offer therefore was relevant and appropriate for consideration since it made slightly more probable the inference that appellant's participation in the crime was lesser than that of others. *Accord Jeffers v. Ricketts*, 627 F.Supp. 1334 (D.Ariz.1986).

The State contends that a rule recognizing such plea offers as relevant for death sentencing purposes should not be declared because it will deter such offers to the detriment of criminal defendants facing capital charges. Such deterrence will not be substantial since the prosecution has the opportunity to diminish the weight of such mitigating circumstances by demonstrating the lack of relationship between the offer and the defendant's nature and offense. I would therefore vacate the conviction for murder and also vacate the sentence of death. In all other respects, I concur in the result.

DICKSON, J., concurs in part that the trial court erroneously refused the tendered lesser included offense instruction, and would vacate the conviction for murder and death sentence.