Ronald L. GROSS, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 485S162.

Supreme Court of Indiana.

April 13, 1987.

John D. Clouse, Michael C. Keating, Laurie A. Baiden, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Cheryl L. Greiner, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant, Ronald L. Gross, was convicted by a Vanderburgh County jury of theft, a class D felony. The jury also found Appellant to be a habitual offender. The trial court sentenced Appellant to two (2) years for the theft conviction, enhanced by thirty (30) years for the habitual offender finding. In this direct appeal, Appellant raises the following issues for our review:

1. error in admitting testimony concerning Appellant's prior criminal involvement;

2. error in admitting certain hearsay testimony;

3. whether the trial court erred in refusing to give two of Appellant's tendered instructions;

4. error in admitting State's Exhibits 1, 2, 3, and 4 during the habitual offender portion of the trial; and

5. whether Indiana's Habitual Offender Statute, Ind.Code § 35–50–2–8, violates the equal protection guarantees of both the Federal and State Constitutions.

The facts which support the jury's determination of guilt are as follows. Prior to March 29, 1983, Appellant, along with Gary Goodwin and others, hatched a plan to stage an automobile accident. Appellant was suffering from injuries received in a previous accident and wanted to "reinjure" himself to collect more insurance money. Appellant gave Goodwin $60 to rent a U–Haul truck. Goodwin was to drive the truck into Appellant's parked car while Appellant was sitting in the car. Goodwin was to receive $500 for his part in the scheme when everything was settled.

On March 29, 1983, the Evansville police responded to an accident at the intersection of Fulton and Oregon in Evansville. They found that a U–Haul truck driven by Goodwin had collided with a parked car in which Appellant was sitting. As a result of this accident, American States Insurance Company paid Appellant $659.98 for the damage to his car, and $395.00 for medical expenses.

Goodwin asked Appellant for the promised $500 several times, but Appellant refused to pay up. A disgruntled Goodwin told Shannon Morrow about the staged accident, and she informed the police. Goodwin was arrested and confessed, implicating Appellant in the scheme.

I

Appellant claims he was prejudiced because the court allowed a question and response of State's Witness, Anthony Cates, that referred to Appellant's prior criminal history. Cates testified that he knew Appellant and had advised him how to set up a fake accident and collect insurance money. Cates and another friend also advised Appellant that Goodwin would be a good person to use to help in a fake accident. Cates' testimony was that although

he advised Appellant, he, Cates, took no part in the incident. During direct examination Cates testified at length about his past criminal involvements, which included attempts to defraud insurance companies by setting up fake accidents. Cates further testified he had been a police informant on many occasions in the past. He plea bargained in this cause so that he would not be charged as an habitual offender. Cates detailed his involvements with the police and discussions he had with them regarding his plea bargain. He further testified he was serving time.

During cross examination by the defense, Cates was questioned further about his involvements with the police and stated that he was arrested for stealing the hood from an automobile. The police told him if he could "do them any good" on Ronnie Gross there would be no charges filed. He was asked by the defense about the police officers' desire to "get" Ronnie Gross. Cates acknowledged that the police did want to get Ronnie Gross. The police told Cates they would get in touch with him when they were ready.

On redirect, the Prosecutor asked Cates if the police had indicated why they were anxious to get Appellant. Defense objected to the question on the grounds that it asked for a conclusion and the court overruled the objection. Cates then answered:

> "Yeah, Ronnie, they figured, had been buying and selling stolen goods, and I think they were a little tired of it."

Appellant made no objection to the answer at that time, nor was any motion to strike or any other relief asked of the court at that point. This was the only question and answer on this subject.

■ It does not appear it was improper for the State to continue to pursue the subject opened by the defense on cross-examination. Although the answer to the question does involve testimony that would ordinarily be improper, we see no reversible error presented. Appellant's only objection to the question was that it asked for an answer based on a conclusion. In his motion to correct errors, and now on appeal, he asserts the testimony was objec-

tionable because it referred to past criminal conduct not reduced to a conviction. Since he now presents an argument different from that made at trial, any error is waived. *Hunter v. State* (1986), Ind., 492 N.E.2d 1067, 1070; *Johnson v. State* (1985), Ind., 472 N.E.2d 892, 909–910, *reh. denied.* Appellant further waived error when he failed to object or move in any way for the testimony to be stricken or the jury admonished at trial. *Locke v. State* (1984), Ind., 461 N.E.2d 1090, 1091; *Gutierrez v. State* (1979), 271 Ind. 639, 645, 395 N.E.2d 218, 222. It is true that an accused's prior criminal conduct unrelated to the crime charged is inadmissible to show the guilt of the accused. *Armstrong v. State* (1980), 274 Ind. 569, 570, 412 N.E.2d 1207, 1208; *Montgomery v. State* (1980), 274 Ind. 544, 547, 412 N.E.2d 793, 795. Such evidence is irrelevant to the guilt or innocence of a defendant and serves only to prejudice the defendant and mislead the jury. *Lawrence v. State* (1972), 259 Ind. 306, 310, 286 N.E.2d 830, 832. While there are exceptions to this general rule, none of them apply to the present situation. We see no reversible error, however, since Appellant invited this testimony and further waived any resulting error.

### II

■ After Appellant rested, the State called Attorney Robert John as a rebuttal witness. Attorney John testified that Appellant hired him to handle a claim for damages received from the accident in question. Attorney John generally testified that he made an assessment of Appellant's lawsuit by investigating the liability and the damages. His investigation indicated that liability was in Gross' favor. He indicated he further checked with a Dr. Marrese to determine Gross' injuries. Appellant objected to the following question put to witness John: "And did he tell you whether he thought an operation might be necessary in this case?" The witness answered: "This is from recollection. I believe the report I got from Dr. Marrese indicated surgery was a possibility."

Appellant's objection to this testimony was that he was tried and convicted for theft from his insurance company by filing a false property damage claim. He claims John's testimony tended to show Appellant staged the wreck to file a false personal injury claim, which was more significant and dramatic than a mere false property damage claim, and therefore prejudicial to him. We fail to see merit in Appellant's position here. Appellant was charged with theft from his insurance company based on a staged wreck. There was evidence of a $659.98 payment by the insurance company to Appellant for property loss, and a $395.00 payment for medical expenses. There also was testimony that Appellant arranged to have his car hit while he sat inside it, in order to collect insurance money. The testimony clearly showed Appellant wished to collect by "reinjuring" himself after a previous injury. Although the testimony did contain hearsay as to Doctor Marreese's opinion on the need for an operation, the purpose of the testimony was not to elicit the truth or falsity of the need for surgery, but was to prove that Appellant filed the claim for damages arising from the staged accident for the purpose of defrauding his insurance company. Thus, the testimony was not inadmissible *See Southard v. State* (1981), Ind.App., 422 N.E.2d 325. Further, it appears Dr. Marreese was under subpoena and was present for cross-examination if Appellant desired. We see no error meriting reversal.

### III

Appellant next contends the trial court erred in refusing to give his tendered final instructions 3 and 4. Tendered instruction 3 related to the lesser included offense of criminal conversion. Tendered instruction 4 was on the standard of reasonable doubt.

■ When we review a trial court's refusal to give instructions, we consider: 1) whether the tendered instruction is a correct statement of the law; 2) whether there is evidence to support giving the instruction; and 3) whether the substance of the tendered instruction is covered by other instructions given by the court. *Davis v.*

*State* (1976), 265 Ind. 476, 478, 355 N.E.2d 836, 838. The choice of instructions lies largely within the trial court's discretion, and we will reverse only where there is an abuse of discretion. *Buttram v. State* (1978), 269 Ind. 598, 602, 382 N.E.2d 166.

■ In this case, Appellant's tendered instruction 3 on the lesser included offense of criminal conversion is nearly identical to the trial court's final instruction 5. It was not an abuse of discretion for the trial court to prefer its own instruction to the one Appellant submitted.

■ Appellant's tendered instruction 4 on the standard of reasonable doubt was somewhat confusing. It read:

"Where there is a reasonable doubt existing in your minds as to the defendant's guilt of an offense, either charged or included in the information, he must be found not guilty.

Where there is a reasonable doubt existing in your minds as to which of two or more degrees of an offense the defendant may be guilty, he must be convicted of the lower degree only."

The trial court instead gave instruction 10, which read:

"A defendant is presumed to be innocent until the contrary is proved. When there is a reasonable doubt whether his guilt is satisfactorily shown, he must be acquitted. When there is a reasonable doubt in which of two or more degrees of an offense he is guilty, he must be convicted of the lowest degree only."

We find the trial court's instruction a more accurate statement of the law, and less confusing than Appellant's tendered instruction. The trial court did not abuse its discretion in refusing to give either of Appellant's tendered instructions.

### IV

■ Appellant next argues the trial court erred in admitting State's exhibits 1, 2, 3, and 4. These four documents were Appellant's conviction records for previous felonies. All four documents were certified by the Clerk of the Vanderburgh Circuit Court. The Clerk testified the exhibits

were accurate court records. Thus, the exhibits were admissible under Ind.R.Tr.P. 44(A)(1). *Pointer v. State* (1986), Ind., 499 N.E.2d 1087, 1089. Appellant asks us to adopt a new rule that only the trial court's order book entries are sufficient evidence to establish a prior felony conviction. We see no reason for such a rule. *Collins v. State* (1981), 275 Ind. 86, 415 N.E.2d 46, 53, *cert. denied*, 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851. The trial court properly admitted State's exhibits 1, 2, 3, and 4.

### V

Finally, Appellant claims Indiana's Habitual Offender Statute, Ind.Code § 35–50–2–8, violates the equal protection guarantees of both the Federal and State Constitutions. Specifically, he attacks section (g) of the statute, which provided:

> "(g) A person may not be sentenced as an habitual offender under this section if more than two [2] of the felonies relied upon for sentencing the person as an habitual offender are substance offenses as defined in IC 35–50–2–10(a)."

Ind.Code § 35–50–2–8(g) (Burns, 1981). We note that section (g) has been amended, and is now embodied in section (h) of the statute which reads:

> "(h) A person may not be sentenced as an habitual offender under this section if all of the felonies relied upon for sentencing the person as an habitual offender are Class D felonies."

Ind.Code § 35–50–2–8(h) (Burns 1985). Appellant argues that section (g) violates equal protection guarantees because it affords unequal treatment to those with prior felony convictions based upon an "unreasonable" classification. The gist of Appellant's argument is that it is unreasonable to differentiate between those who abuse substances and those who do not, and to impose a harsher penalty on the former.

█ We are unwilling to entertain Appellant's argument because he lacks standing to challenge section (g) of the statute, and because the question is moot. To have standing to challenge the constitutionality of a statute, Appellant must establish that his rights were adversely affected by oper-

ation of both the statute and the particular section he is attacking. *Palmer v. State* (1985), Ind., 486 N.E.2d 477, 480; *State v. Clark* (1966), 247 Ind. 490, 494, 217 N.E.2d 588, 590. Here, Appellant's rights were not affected in any way by section (g). None of Appellant's prior felony convictions involved substance offenses. Since he was not affected by section (g), Appellant does not have standing to challenge its constitutionality.

Even if Appellant had standing to challenge the constitutionality of section (g), the question is "moot." *Haggerty v. Bloomington Bd. of Public Safety* (1985), Ind.App., 474 N.E.2d 114, 116. The substance of section (g) was altered substantially when it was incorporated into section (h) by the 1985 amendment, P.L. 328–1985, § 2. The part of the statute Appellant complains of no longer exists. There is no error here.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.