David B. HUGHES, Appellant,

v.

STATE of Indiana, Appellee.

No. 63S00–8806–CR–560.

Supreme Court of Indiana.

Dec. 5, 1989.

Steven E. Ripstra, Lytton and Ripstra, Jasper, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in appellant's conviction of two counts of Murder, for which he received two sixty (60) year sentences, and two counts of Conspiracy to Commit Murder, Class A felonies, for which he received two fifty (50) year sentences, his sentences to be served concurrently.

The facts are: In February of 1986, fifteen-year-old Teana Ruppel began dating appellant. In the spring of 1986, Teana told her friend Shawna Willis that she was having problems with her parents because they would not let her marry appellant.

She said that because her parents would not let her get married and because her mother chewed her out all the time, she would like to kill both of her parents, and appellant was going to do it.

Shawna testified that she had another conversation with Teana at school in which Teana asked her what she thought she ought to do about killing her parents, and she indicated that appellant was going to do it. Shawna advised her to not do it because she would regret it. A few days before Christmas in 1986 Shawna and Teana were conversing with several other girls and Teana said that her parents would not be around after Christmas.

Toni Bowens testified that Teana told her at school that she was not happy with her parents because they would not let her marry appellant, but one way or another, she was going to marry him.

Fifteen-year-old Jackie Rowe testified that Teana told her that her parents would not let her marry appellant and her father molested her. She stated that she wanted to kill them. In November of 1986, Teana asked her to help in their murders by spending the night with her, leaving the house, then returning to act surprised that they were dead. Teana told Jackie that appellant was going to come from the woods behind their house and shoot her mother in the head, then they would wait for her father and shoot him in the head also. Jackie said they planned to steal some of her mother's jewelry to make it look like a robbery.

On the evening of Sunday, December 28, 1986, Teana and appellant visited the home of the minister of their church and asked him whether he had seen Teana's parents, who had been missing since the previous Friday night, December 26. After discussing the problem with her minister, Teana and appellant left. The minister then decided to conduct a search around the Ruppel home, and his wife called the police. She also called the Ruppel residence to inform Teana that her husband was on his way. When they arrived at the Ruppel home, appellant was outside on the deck holding a flashlight as though he was looking for something; Teana was inside wiping something off the floor in the foyer.

Police arrived and they began an investigation. Teana told police that she had not seen her parents since she left on a date with appellant the previous Friday at 7:45 p.m. She stated that she returned home from her date Saturday at 3:00 a.m., and her parents were gone and had left no note. She spent the weekend with appellant at his house, periodically checking in at home to see if her parents had returned. Teana and appellant reported that the only items missing from the Ruppel home were three guns.

Brenda Bolin, Teana's mother's best friend, testified that the Ruppels were very strict with Teana, and it would be very unusual for Teana to be allowed to stay out until 3:00 a.m. She also stated that they kept their doors locked at all times. There were no signs of forced entry into the home.

Police conducted a search of appellant's van and found inside a bag a black plastic wristwatch which had belonged to Teana's father, Mike. They found a stain on the tailgate of Mike Ruppel's truck which testing revealed was human blood. Due to the fact that Mike Ruppel had moved the truck's ignition switch to a position under the dash which could not be seen from the driver's seat, the truck was difficult to start unless the driver was familiar with it.

Several statements were taken from Teana and appellant. They were inconsistent both with themselves and between each other concerning where they were during Friday, December 26, and Saturday, December 27. In his statement to police, appellant admitted that Teana had asked him to kill her parents on one occasion, and on another, she suggested that appellant either would do it himself or pay to have it done. Appellant stated that he refused to do either.

On December 29, 1986, Bobby McGowan was looking for scrap metal in an abandoned coal-mining pit in which people had thrown debris. He found the bodies of Teana's parents. The coroner testified that

they died from several gunshot wounds to their heads.

The tires on Ruppel's truck matched the tire impressions left at the top of the cliff from which the bodies were dumped.

Officer Lynch testified that when appellant and Teana were in the Pike County Jail filling out a missing persons report, they were informed that two bodies had been found in rural Pike county. Upon learning that information, appellant asked Officer Lynch whether he and Teana could get married if something had happened to the Ruppels.

Teana's uncle testified that while he was seated next to Teana and appellant at the funeral home, Teana told appellant that they now had $85,000 in life insurance, a new car to drive, a motorcycle, and a nice home to live in.

In their investigation, police collected various fibers. A chemist employed by the Indiana State Police testified that the fibers were very unusual, and they came from a blanket found in the Ruppel home or one exactly like it. The blanket fibers were found on the deck outside the Ruppel home, on the clothing of both victims, on a rope found at the top of the cliff from which the victims' bodies were dumped, and on a lint-trap screen in the dryer of the Ruppel home. The fact that the fibers were found in the lint trap indicated to the expert that the blanket had been washed recently.

Appellant argues his recorded statements and the diagrams and maps he made which illustrated his statements were erroneously admitted at trial. He first contends they were erroneously admitted because they were hearsay and contained material prejudicial to him, such as his admission that he had consumed drugs and alcohol and that he had sex with Teana knowing it was a crime due to her age.

Also in appellant's statement to police he admitted that Teana had asked him to kill her parents and the following conversation occurred:

"Police: Would you kill her parents if you were under a state of intoxication? To the point that you might not remember everything?"

Appellant: I don't think so."

. . . . .

"Police: ... In your mind you don't know whether you killed them or not.

Appellant: I think I didn't.

Police: But you don't know. You don't know for sure ...

Appellant: I think I didn't.

Police: But you don't know for sure ...

Appellant: As far as I know, I didn't. Teana said I didn't.

Police: Did she?

Appellant: Not that I know of, no."

. . . . .

Appellant: Well, as far as I know, I didn't.

Police: ... But you don't know for sure? How sure are you? You're not a hundred percent. Are you fifty percent sure?

Appellant: Bout ... ninety percent sure.

Police: About ninety. See, we want to know about that other ten."

Appellant believes his statements should have been excluded.

▆▆▆ Silence or an equivocal response to an assertion made by another, which would ordinarily be expected to be denied, is a tacit admission. *Moredock v. State* (1982), Ind., 441 N.E.2d 1372. A defendant's objection to hearsay testimony is properly overruled when the hearsay is an admission previously made by that defendant. *Jethroe v. State* (1975), 262 Ind. 505, 319 N.E.2d 133. Additionally, he is not denied his Sixth Amendment right to confront the witnesses against him when the out-of-court declarant was himself. *Id.*

▆▆▆ If a defendant participates in a conversation implicating himself, the whole of the conversation is admissible. *Smith v. State* (1980), Ind., 400 N.E.2d 1137; *McFarland v. State* (1975), 263 Ind. 657, 336 N.E.2d 824.

▆▆▆ Appellant's statements, when compared with themselves and those of Teana, demonstrated several inconsistencies in appellant's whereabouts near the time of the

murders. In his later statements, he changed his version of the facts to explain inconsistencies in prior statements. Any testimony tending to show an accused's attempt to conceal implicating evidence or to manufacture exculpatory evidence may be considered by the trier of fact as relevant because it reveals a consciousness of guilt. *Grimes v. State* (1983), Ind., 450 N.E.2d 512. We find no error in admitting appellant's statements.

■ Appellant also argues his statements should not have been admitted into evidence because they contained information about his involvement in other criminal activity, such as his illegal use of alcohol and his sexual relations with Teana. He believes the information was irrelevant and prejudicial.

In its final instructions to the jury, the trial court admonished them to disregard any references to other offenses which the appellant may have committed which were not relevant to the matter before the court.

We have held that when the jury is properly instructed to disregard testimony about the defendant's prior unrelated criminal activity, we presume the jury followed the instructions. *Duncanson v. State* (1987), Ind., 509 N.E.2d 182. We find no reversible error.

■ Appellant argues the trial court erroneously admitted other hearsay evidence. State's Exhibit No. 176 was a handwritten note which stated: "Dad's clean out The wood Berner ang start a frir Mom's in Bed". A witness, who was an expert in handwriting analysis, testified that, in his opinion, the note was written by Teana. Appellant asserts the note consisted of inadmissible hearsay.

■ Hearsay is an out-of-court statement offered to prove the truth of the facts asserted therein and thus resting on the credibility of a declarant who is not in court and is unavailable for cross-examination. *Koehler v. State* (1986), Ind., 499 N.E.2d 196.

The trial court overruled appellant's objection, stating that the note was written by Teana, who had testified and was sub-

ject to cross-examination. The note was admissible on other grounds. Evidence established that a wood-burning stove heated the Ruppel home. It was the theory of the State that the note was written by Teana for the purpose of telling her father to go out to the woodpile when he got home. When he came back inside the foyer with an armload of wood, he was shot in the head. Happenings near in time and place which complete the story of the crime, by proving its immediate context, are admissible under the theory of *res gestae*. *Jones v. State* (1986), Ind., 500 N.E.2d 1166; *Brown v. State* (1981), 275 Ind. 441, 417 N.E.2d 333. We find no error in admitting the note.

■ Appellant contends hearsay evidence was improperly admitted when certain witnesses testified about what the victims previously had told them. The prosecutor questioned Velda Qualkenbush, the wife of the Ruppel's minister, in an attempt to establish the type of relationship Teana had with her parents. She testified that she believed Teana's parents wanted to limit the amount of time Teana spent with appellant, and they were strict with her. She was asked whether Teana had a curfew, and appellant objected to her answer as hearsay because she was testifying about what Teana's mother had told her. The prosecutor stated they were not offering the evidence to establish the truth of the matter, but to establish the states of mind of the individuals. He added that the declarant was dead and unable to testify. The trial court allowed Qualkenbush to testify that Teana's mother told her Teana was allowed to stay out until 11:00.

Qualkenbush's testimony was offered not to prove the truth of the matter asserted by Teana's mother, but was introduced to establish her state of mind concerning her relationship with Teana and the circumstances which led to the victims' deaths. *Smith v. State* (1986), Ind., 490 N.E.2d 300; *Dunaway v. State* (1982), Ind., 440 N.E.2d 682. We find no error in overruling the hearsay objection.

■ Appellant also complains about hearsay testimony admitted when police officer Frank Coleman testified about his conversation with Teana after she reported that her parents were missing. He asked Teana about her parents' opinion of appellant. Coleman stated that Teana replied that her parents were concerned that appellant would not be able to support her because he had a pin in his leg.

Again, Teana was in court *and had testified as to having a conversation with the officer* and *was* available for cross-examination. Therefore, we find no error in admitting Officer Coleman's testimony. *Guajardo v. State* (1986), Ind., 496 N.E.2d 1300.

■ Appellant contends his constitutional rights were not explained before he made certain statements to police. The first conversation about which appellant complains occurred at the kitchen table in the Ruppel home after they had reported Teana's parents missing. The second conversation occurred in a room at the Pike County Jail where Teana and appellant conversed with police for the purpose of filling out a missing persons report. An officer testified that appellant had not yet been arrested, he was not being interrogated, and he was not a suspect at that time.

At the time appellant made the statements, he was not subjected to custodial interrogation. *Miranda* safeguards apply only to custodial interrogation conducted by law enforcement officers. *Whitehead v. State* (1987), Ind., 511 N.E.2d 284, *cert. denied*, 484 U.S. 1031, 108 S.Ct. 761, 98 L.Ed.2d 773. We find no violation of appellant's constitutional rights.

■ Appellant also argues that the conversation which occurred in the Pike County Jail should not have been admitted because it was hearsay. Officer Lynch testified that while appellant and Teana were present filling out a missing persons report, they received word that two bodies had been found in rural Pike County. Upon learning that information, appellant asked Officer Lynch whether he and Teana could get married if something had happened to the Ruppels. Appellant believes

the conversation included inadmissible hearsay.

Appellant's objection is to no avail because he made a statement against his interest. *See Jethroe, supra.*

■ Appellant argues the trial court should not have allowed Teana to testify because her mental competency to stand trial and assist her counsel was not established. Teana was granted use immunity for her testimony. Before she testified, her counsel stated his apprehension that she was not sufficiently competent to confine her answers to the questions which would be asked, and should not be required to provide extraneous testimony which may later be used against her. The trial court conducted an examination of Teana in which she was asked her age, address, the names of her parents, and whether she knew the definition of an "oath." It was determined that she knew the difference between the truth and a lie. She answered questions about her schoolwork. She stated that she made average grades in some classes and below average grades in others. After conducting the examination, the trial court determined that Teana was competent to testify as a witness.

■ When competency to testify is placed in issue, it is the trial court's duty to schedule a hearing to determine whether the witness is in fact competent to testify. The test of competency of a witness is whether the witness has sufficient mental capacity to perceive, to remember, to narrate the incident he has observed, and to understand and appreciate the nature and obligation of an oath. If the evidence places competency in doubt, the trial court should order the witness to be examined by a psychiatrist unless the State can show a paramount interest in denying the petition. The determination of a witness's competency is a matter committed to the sound discretion of the trial court, whose determination is reviewable only when a manifest abuse of discretion has occurred. *Johnston v. State* (1988), Ind., 517 N.E.2d 397; *Mengon v. State* (1987), Ind., 505 N.E.2d 788.

No evidence was presented, such as a record of mental problems or drug abuse, to support the allegation that Teana was incompetent to perform as a witness. The trial court's hearing sufficiently established that Teana had the ability to recall and articulate an occurrence and that she understood the meaning of an oath. We find no abuse of trial court discretion in failing to order a psychiatric examination of Teana.

 Appellant contends the trial court should have granted his motion for change of venue due to pretrial publicity. The record contains numerous news accounts of the investigation of the murders and the arrests of appellant and Teana.

 The disposition of a motion for change of venue rests within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Linthicum v. State* (1987), Ind., 511 N.E.2d 1026. To prevail on appeal, the defense must show the existence of prejudicial publicity and that jurors were unable to set aside their preconceived notions of guilt and render a verdict based upon the evidence. *Burdine v. State* (1987), Ind., 515 N.E.2d 1085.

The record shows that the trial court conducted a hearing on the motion for change of venue. During the hearing, the prosecutor filed eighty-one affidavits from "individuals off the street." The affiants stated that they were aware of the pretrial publicity, but that they had not formed an opinion as to the guilt or innocence of appellant and they were aware that the guilt or innocence of appellant is to be determined by a jury and not the news media. The prosecutor stated that only one person would not sign an affidavit. He added that if during *voir dire*, it becomes evident that potential jurors could not render an unbiased opinion, then the parties would probably agree to venue the case to a different county. During *voir dire*, the panel was asked whether they could set aside the news accounts they had heard and consider only the testimony given at trial. Some prospective jurors stated they could, and some stated they could not. Both parties struck potential jurors peremptorily and for cause. The trial court took appellant's motion under advisement pending *voir dire*, then denied the motion upon its completion.

Appellant has not made a showing that the jurors were unable to set aside their preconceived notions of guilt and render a verdict based upon the evidence. We find no abuse of trial court discretion in denying appellant's motion for change of venue.

 Appellant argues he should have been granted a new trial based upon newly-discovered evidence. After appellant's trial, Teana pled guilty to two counts of conspiracy to commit murder. Appellant contends that Teana obviously perjured herself at his trial, in that she stated that neither of them was involved in the murders. He concludes that he would have conducted his trial strategy differently had he known Teana would plead guilty.

 To gain a new trial based upon newly-discovered evidence, appellant must prove that: 1) the evidence has been discovered since the trial; 2) it is material and relevant; 3) it is not cumulative; 4) it is not merely impeaching; 5) it is not privileged or incompetent; 6) due diligence was used to discover it in time for trial; 7) the evidence is worthy of credit; 8) it can be produced on a retrial of the case; and 9) it will probably produce a different result. *Rozika v. State* (1988), Ind., 520 N.E.2d 1267.

 We disagree with appellant that Teana's guilty plea entitles him to a new trial. Evidence of a conviction or guilty plea of others charged with the same offense as the defendant is not substantive evidence of the defendant's guilt or innocence. *Phelps v. State* (1983), Ind.App., 453 N.E.2d 350. Teana's guilty plea was irrelevant to appellant's case. Additionally, the evidence merely impeached Teana's testimony, and appellant has not shown that it would produce a different result upon retrial. No error occurred in denying appellant's motion for new trial.

■ Appellant contends nineteen photographs admitted at trial were gruesome and prejudicial to his defense. The photographs depicted the pre-autopsy bodies of the victims lying on a surgery table. Some photographs were close-ups of the victims' gunshot wounds and bruises from bludgeoning. Appellant states that evidence of the victims' deaths already had been presented to the jury and there was no reason to admit all nineteen photographs.

■ The admission of photographs is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. Photographs of a victim's corpse in a homicide case are relevant not only to prove his or her identity, but serve as an aid to understanding the pathologist's findings on the cause of death. *Brown v. State* (1987), Ind., 503 N.E.2d 405. Photographs showing the victim in his or her natural state following death are relevant and admissible. *Loy v. State* (1982), Ind., 436 N.E.2d 1125.

No photograph in appellant's case was repetitive of another; each depicted a separate wound inflicted upon the victims and they correlated with the pathologist's testimony. We find no error occurred in admitting the photographs.

■ Appellant alleges the trial court erroneously refused his Proposed Instruction No. 3, which stated:

"You are instructed that you are to consider the testimony of David Hughes, the Defendant, only for impeachment purposes. That is, you cannot consider his testimony substantively to prove an element of the crime or crimes charged."

■ The choice of instructions lies largely within the discretion of the trial court. We will reverse only where there is shown to be an abuse of discretion. When we review a trial court's refusal to give an instruction, we consider: 1) whether the tendered instruction was a correct statement of the law; 2) whether there is evidence to support giving the instruction; and 3) whether the substance of the tendered instruction was covered by other in-

structions given by the court. *Gross v. State* (1987), Ind., 506 N.E.2d 17.

Appellant did not testify at trial except to establish that he had decided not to testify. Therefore, there was not evidence to support giving the instruction, so it was properly refused. *Id.* Additionally, we stated above that the statements given by appellant to police were properly admitted as substantive evidence. We find no error in refusing the instruction.

■ Appellant also argues the trial court improperly refused his Proposed Instruction No. 1, which stated:

"To prove an allegation beyond a reasonable doubt requires more evidence than to prove an allegation by a preponderance of the evidence."

The record shows the jury was instructed that to overcome the presumption of innocence, the State must prove the defendant guilty of each element of the crime charged beyond a reasonable doubt. They were instructed that a reasonable doubt is a fair, actual, and logical doubt which arises in their minds after an impartial consideration of all of the evidence and circumstances in the case, and it should be a doubt based upon reason and common sense and not upon imagination or speculation. The jury was further instructed that although the State must prove appellant guilty beyond a reasonable doubt, the proof need not be beyond all possible doubt because such proof could seldom if ever be produced. We find the instructions given to the jury adequately covered the subject of reasonable doubt, and no error occurred in refusing appellant's Proposed Instruction No. 1. *Id.*

■ Appellant contends the evidence is insufficient to support his convictions. He discounts the testimony of experts concerning the blanket fibers, blood samples, and tire treads and states that they did not directly connect him to the murders. He again argues that the statements made by him to police should not have been admitted.

On a claim involving the sufficiency of the evidence, this Court will not reweigh

the evidence or judge the credibility of the witnesses. *Wagner v. State* (1984), Ind., 471 N.E.2d 669. It is the function of the jury to weigh the testimony of an expert witness in the same manner it weighs the testimony of any other witness, taking into consideration the probability of the truth of the testimony with the facts from which the witness draws his or her conclusions. *Van Orden v. State* (1984), Ind., 469 N.E.2d 1153, *cert. denied*, 471 U.S. 1104, 105 S.Ct. 2335, 85 L.Ed.2d 851.

The State's burden of proof on each element of an offense charged may be established by circumstantial evidence and the logical inferences drawn therefrom. *Watkins v. State* (1984), Ind., 468 N.E.2d 1049. Triers of fact may draw reasonable inferences from facts established either by direct or circumstantial evidence, and a guilty verdict may be based solely upon circumstantial evidence. *Harris v. State* (1981), Ind., 425 N.E.2d 112. On review, this Court need not determine that circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence, but only that an inference may reasonably be drawn which supports the finding. *Smith v. State* (1984), Ind., 468 N.E.2d 512.

The evidence presented in the statement of facts, though circumstantial, is sufficient for the trier of fact to determine that appellant is guilty of murder and conspiracy to commit murder.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.